Lawrence J. ARNDT, et al., Plaintiffs,

v.

The WHEELABRATOR CORPORATION, Defendant.

No. S89–360 (RLM).

United States District Court, N.D. Indiana, South Bend Division.

May 15, 1991.

Barry A. Macey, Indianapolis, Ind., Charles S. Leone, South Bend, Ind., for plaintiffs.

Timothy W. Woods, James H. Pankow, Robert W. Mysliwiec, South Bend, Ind., Roger K. Quillen, Robert C. Christenson, David R. Kresser, Atlanta, Ga., for defendant.

## MEMORANDUM AND ORDER

MILLER, District Judge.

A group of retirees, spouses, and children contend that a series of expired collective bargaining agreements guaranteed them health benefits at certain levels for life. They contend that the defendant violated the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, by modifying those health benefits after the agreements expired. The defendant employer contends that nothing in the agreements or the plan documents indicates an intention to preclude such a modification. Both sides have moved for summary judgment. For the reasons that follow, the court concludes that the law of this circuit compels judgment for the defendant employer.

### I.

The Wheelabrator Corporation operated a manufacturing plant in Mishawaka, Indiana for many years until it closed the facility in 1988. During the plant's operation, its production and maintenance employees were represented by United Auto Workers ("UAW") Local 995, and its research and development employees by UAW Local 5. The UAW locals negotiated contracts with Wheelabrator on behalf of current and retired employees. The first contract providing health insurance for retirees was in 1962.

The 1965 agreement contained a provision that, "Those employees who have retired since September 22, 1959 will have the full cost of their Blue Cross–Blue Shield coverage paid by the Company after they attain 65 years of age...." There was no express provision that this benefit was established for the life of the retirees, but a letter to retirees from the Director of Industrial Relations shortly after this contract was signed stated that:

> Effective on January 1, 1966, the Company will pay the full cost of your Blue Cross–Blue Shield premium.
>
> Effective on July 1, 1966, and thereafter during your lifetime, the Company will continue to pay the full cost of your Blue Cross–Blue Shield premium; but you will be re-enrolled in a Company group program which, combined with Medicare provisions taking effect on that date, will provide a level of benefits equal to those offered active employees.

From 1965 until 1987, retiring employees received a form letter entitled "Your Benefits As A Union Retiree of Wheelabrator–Frye Inc." from the personnel administrator, which stated that, "Both you and your spouse will be covered [for health insurance] for the remainder of your lives." In response to inquiries regarding the status of coverage, Wheelabrator assured retirees that they were covered for life.

Glenn Fulmer, a union negotiator as well as Wheelabrator's Manager of Labor Relations from 1970 to 1982, testified that he normally met with employees before their retirement and told them that they would have the same level of insurance benefits for life that they had as active employees. This was his understanding from his negotiations. However, Mr. Fulmer's superior, Ralph E. Sanford, stated in his affidavit

that neither he nor Mr. Fulmer had authority to make such a statement or to commit Wheelabrator to such a position, and further that it was not Mr. Fulmer's responsibility to explain benefits to retirees.

In the 1968 collective bargaining agreement, the Medicare supplement was expanded to provide that, "Such supplemental benefits shall be continued for the spouse after the death of the retiree." Subsequent collective bargaining agreements continued to expand the retirees' health insurance coverage. In 1982, the agreement between Wheelabrator and Local 995 made several amendments to the benefits provided, but the section covering retirees' health insurance was unchanged. It did state that:

> In case of a plant closing, the Company agrees that employees eligible to retire with paid up insurance but who lack (1) one year of either age or service, will be considered eligible.

In the opinion of the UAW's chief negotiator, this meant that if the plant closed, those within a year of eligibility for retirement would have their health insurance premiums paid for life. At the ratification meeting, the Union explained the amended agreement to its members in a document, which stated:

> INSURANCE—If plant closes, all those eligible to retire at the time of closing, plus those within one (1) year of being eligible to retire, will receive all insurance benefits for life.

The last collective bargaining agreement between Wheelabrator and UAW Local 995, which covered active and retired production and maintenance employees, was effective from September 24, 1985 to September 24, 1988. The last agreement between Wheelabrator and UAW Local 5 covering active and retired research and development employees was effective from January 6, 1986 to December 1, 1988. Article 14, Section 5 of each agreement provided for hospital and surgical insurance coverage for employees who retired before January 1, 1986. Like the 1965 agreement, this section stated that employees who retired since September 22, 1959 would have the full cost of their Blue Cross–Blue Shield coverage paid after attaining age 65 and provided for a Medicare supplement to provide benefits equal to those provided for active and retired employees age 65 and over. The supplemental benefits were to be continued for the spouse after the death of the retiree. In addition to this provision, the agreement had a separate provision for health insurance coverage for employees who retired after January 1, 1986, which provided a vesting schedule and stated that, "This coverage will be provided to the retiree and spouse at no cost for life." No such statement appeared in the provision for employees retiring before 1986.

On March 1, 1989, Wheelabrator reduced the health insurance benefits for its pre-1986 retirees. Wheelabrator's president issued a letter dated February 9, stating in part:

> As you know, the union contract in effect when you or your spouse retired provided you with the same health insurance benefits available to active employees of The Wheelabrator Corporation. That contract has now expired....
>
> First, the medical plan will include deductibles and coinsurance payments that apply to all expenses including prescription drugs.... Second, we have had to eliminate the dental, vision, and hearing benefits.

An attachment to this letter set forth the comparison of the new and old insurance plans. The deductible was doubled, the maximum benefit rose from $150,000.00 per insured to $500,000.00 per insured, and the percentage of the costs paid decreased from 100% to 80%, with many types of costs requiring a deductible for the first time. An out-of-pocket maximum of $1,200.00 per individual or $2,400.00 per family was added to the plan. The summary plan description outlining the coverage stated that, "The Wheelabrator Corporation may terminate, suspend, withdraw, amend, or modify the Plan in whole or in part at any time."

## II.

The retirees and their spouses bring this class action seeking restoration of benefits,

damages for lost benefits, medical expenses incurred due to lost benefits, damages for mental distress, costs, and attorney fees.

### A.

■ Count I of their complaint alleges that Wheelabrator breached its collective bargaining agreement in violation of the LMRA because the collective bargaining agreement gave retirees and their spouses a life-long right to insurance benefits that were not to be reduced. Wheelabrator contends that the court lacks subject matter jurisdiction over the claim in Count I, and that Count I fails to state a claim because the agreements under which Count I is brought expired by their own terms in 1988 before Wheelabrator changed the retirees' benefits.

As to Count I, Wheelabrator contends that the action under the LMRA should be dismissed because the contracts on which it is based expired by their own terms before the action accrued. The LMRA provides in part:

> Suits for violation of contracts between an employer and a labor organization ... may be brought in any district court of the United States having jurisdiction of the parties....

29 U.S.C. § 185(a).

Most of the parties' arguments presented addressed the summary judgment motions. Wheelabrator did argue that this court lacks jurisdiction of the LMRA claim in Count I and Count I fails to state a claim because of the expiration of the agreements, but the court has not found in the cases upon which Wheelabrator relies a holding that an LMRA action should be dismissed pursuant to Fed.R.Civ.P. 12(b)(1) or 12(b)(6) because of the expiration of the agreements. It appears that the determination of the parties' intent as to the duration of the collective bargaining agreements' terms is more properly made in a summary judgment motion than a motion to dismiss. Further, paragraphs 11 and 12 of the amended complaint allege that Wheelabrator was obligated to provide retirees the same level of benefits for life.

Therefore, Count I should not be dismissed for failure to state a claim.

### B.

Count II alleges that Wheelabrator violated ERISA by failing to administer their employee welfare benefit plans according to their terms and by breaching its fiduciary duty with respect to the benefit plans and participants. Wheelabrator claims entitlement to judgment as a matter of law because the plaintiffs cannot show that Wheelabrator was required to provide the same level of benefits to the retirees for life, and it is undisputed that Wheelabrator did not waive its flexibility to alter the benefit plans.

Wheelabrator also claims that the plaintiffs are not entitled to attorney fees under Count I as a matter of law nor to a jury trial on any claim in the complaint. Finally, Wheelabrator asks that the demand for extracontractual damages be stricken.

### C.

The plaintiffs seek summary judgment on the issue of liability on both Counts I and II. Because their motion addresses the same issues as the defendant's summary judgment motions, the court will discuss the arguments presented in the cross-motions together.

For the reasons that follow, the court concludes that Wheelabrator is entitled to summary judgment as a matter of law on both Counts I and II, rendering unnecessary any further discussion of the jury demand, attorney fees, and extracontractual damages.

### III.

■ A party seeking summary judgment must demonstrate that no genuine issue of fact exists for trial and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Certain Underwriters of Lloyd's v. General Accident Ins. Co. of America*, 909 F.2d 228, 231 (7th Cir.1990). If that showing is made and the motion's opponent would bear the burden at trial on the matter that forms the basis

of the motion, the opponent must come forth with evidence to show what facts are in actual dispute. *Lujan v. National Wildlife Federation,* — U.S. —, 110 S.Ct. 3177, 3186, 111 L.Ed.2d 695 (1990); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Sims v. Mulcahy,* 902 F.2d 524, 540 (7th Cir.), *cert. denied* — U.S. —, 111 S.Ct. 249, 112 L.Ed.2d 207 (1990). If he fails to do so, summary judgment is proper. *Fitzpatrick v. Catholic Bishop of Chicago,* 916 F.2d 1254, 1256 (7th Cir.1990); *Tatalovich v. City of Superior,* 904 F.2d 1135, 1142 (7th Cir.1990). A genuine factual issue exists only when there is sufficient evidence for a jury to return a verdict for the motion's opponent. *Harbor House Condominium Ass'n v. Massachusetts Bay Ins. Co.,* 915 F.2d 316, 320 (7th Cir.1990); *Hines v. British Steel Corp.,* 907 F.2d 726, 728 (7th Cir.1990). Summary judgment should be granted if no reasonable jury could return a verdict for the motion's opponent. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Visser v. Packer Engineering Associates, Inc.,* 924 F.2d 655, 660 (7th Cir.1991).

■ The parties cannot rest on mere allegations in the pleadings, *McCarthy v. Kemper Life Ins. Companies,* 924 F.2d 683, 687 (7th Cir.1991), or upon conclusory allegations in affidavits. *Mestayer v. Wisconsin Physicians Service Ins. Corp.,* 905 F.2d 1077, 1079 (7th Cir.1990). The court must construe the facts as favorably to the non-moving party as the record will permit, *Soldal v. County of Cook,* 923 F.2d 1241, 1245 (7th Cir.1991), and draw any permissible inferences from the materials before it in favor of the non-moving party, *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Illinois Bell Telephone Co. v. Hanes and Co., Inc.,* 905 F.2d 1081, 1087 (7th Cir.1990), as long as the inferences are reasonable. *Bank Leumi Le–Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir. 1991). The non-moving party must show that the disputed fact is material, or outcome-determinative, under applicable law. *Johnson v. Pelker,* 891 F.2d 136, 138 (7th Cir.1989).

■ Even on an issue of intent, summary judgment is proper if the party with the burden at trial presents no indication of the necessary motive or intent. *Illinois Bell Telephone Co. v. Haines & Co.,* 905 F.2d 1081, 1087 (7th Cir.1990); *Holland v. Jefferson Nat'l Life Ins. Co.,* 883 F.2d 1307 (7th Cir.1989).

The court will address the parties' motions with the above standards in mind.

## IV.

■ Under ERISA, welfare benefit plans, such as the plans at issue in this case, are not subject to the stringent vesting, funding, and participation requirements of pension plans. 29 U.S.C. § 1051 *et seq.* Therefore, an employer may unilaterally amend to terminate a welfare benefit plan without violating ERISA. *Young v. Standard Oil (Indiana),* 849 F.2d 1039 (7th Cir.), *cert. denied,* 488 U.S. 981, 109 S.Ct. 529, 102 L.Ed.2d 561 (1988). *See also Moore v. Metropolitan Life Ins. Co.,* 856 F.2d 488, 491 (2d Cir.1988). Wheelabrator asserts that it retained the flexibility to amend its insurance plan as it saw fit insofar as the pre–1986 retirees' rights in the plan did not vest. For this reason, Wheelabrator claims that summary judgment should be entered as to Count II.

■ Wheelabrator relies on *Merk v. Jewel Companies, Inc.,* 848 F.2d 761, 763 (7th Cir.), *cert. denied,* 488 U.S. 956, 109 S.Ct. 393, 102 L.Ed.2d 382 (1988), which held that:

> The entitlements established by collective bargaining agreements do not survive their expiration or modification. So if, for example, the [prior] agreement had established a plan under which Jewel provided health benefits for its employees and retirees, the Union and Jewel would have been free to abolish those benefits for subsequent periods, even though the Union does not represent retirees. If the Union and Jewel had reached an impasse, Jewel would have been free to put into place its last proposal, which might not have included health benefits. *Anderson v. Alpha Portland*

*Industries, Inc.,* 836 F.2d 1512 (8th Cir. 1988); *Bartman v. Allis–Chalmers Corp.,* 799 F.2d 311 (7th Cir.1986); cf. *DeGeare v. Alpha Portland Industries, Inc.,* 837 F.2d 812 (8th Cir.1988) (ERISA does not alter the rule of labor law in this respect). That the retirees had worked in earlier years in the expectation that they were receiving money today and health benefits later would not matter. Because of the time limit on the collective bargaining agreement, any subjective expectation they may have had is not enforceable.

The plaintiffs criticize Wheelabrator's reliance on dicta *Jewel Companies,* a case arising out of a company's unilateral wage reduction and not out of a modification of health care benefits. Although the language quoted is dicta, *Jewel Companies* stands for the proposition that entitlements established by collective bargaining agreements do not survive their expiration.

The plaintiffs ask the court to follow *UAW v. Yard–Man, Inc.,* 716 F.2d 1476 (6th Cir.1983), *cert. denied,* 465 U.S. 1007, 104 S.Ct. 1002, 79 L.Ed.2d 234 (1984), which held that whether retiree insurance benefits continued beyond the expiration of collective bargaining agreements depends upon the intent of the parties. The *Yard–Man* court stated that in discerning the parties' intent, the trial court should look first to the agreement's explicit language. When ambiguities exist, the court may look to other words and phrases in the agreement for guidance in ascertaining the parties' intent. Having no extrinsic evidence on the parties' intent, the court looked solely to the language of the collective bargaining agreement and found ambiguity in the section stating that:

When the former employee has attained the age of 65 years then:

(1) *The Company will provide insurance benefits equal to the active group benefits ... for the former employee and his spouse.*

*Yard–Man,* 716 F.2d at 1480 (emphasis in text). Therefore, the court looked to other provisions in the agreement and concluded that the parties "intended to create vesting

insurance benefits in the Yard–Man retirees which continue beyond the life of the collective bargaining agreement." 716 F.2d at 1481. The court reached this conclusion because other provisions for termination of benefits of active employees were explicitly stated and inapplicable to retirees. One provision limited the insurance coverage for the retiree's spouse and dependent children to the expiration of the collective bargaining agreement in the event of the retiree's death. Further, Yard–Man had continued to provide retirees with insurance benefits long after the plant closed, indicating that it did not consider retirees' benefits to be tied to the durational limits of the active employees. Although the court agreed with Yard–Man that "traditional rules of contractual interpretation require a clear manifestation of intent before conferring a benefit or obligation", it did not agree that "the duration of the benefit once clearly conferred is subject to this structure." *Yard–Man,* 716 F.2d at 1481 n. 2.

As Wheelabrator argues, the Seventh Circuit has not adopted the *Yard–Man* approach to determining whether benefits conferred in collective bargaining agreements automatically vest upon retirement. Instead, the plaintiffs at all times bear the burden of showing that the parties clearly intended that benefits would survive the collective bargaining agreement's expiration. In *UAW v. New Castle Foundry, Inc.,* 114 L.R.R.M. (BNA) 3589 (S.D.Ind. 1983), the court did not employ a burden-shifting approach like the one applied in *Yard–Man:*

Plaintiff also cites a recent district court decision in which a rule of construction is adopted that creates a presumption in favor of vested retirement benefits in the absence of clear evidence indicating a contrary intention.... The effect of such a rule is to shift the burden of persuasion in cases such as the present one from plaintiff to defendant. However, even if the rule of [that case] is sound (an issue on which we express no opinion), the evidence of a "contrary intention" is sufficiently clear in the

present case to require a decision for defendants.

*New Castle Foundry,* 114 L.R.R.M. (BNA) at 3591 (citation omitted). *See also Anderson v. Alpha Portland Industries, Inc.,* 836 F.2d 1512 (8th Cir.1988), *cert. denied,* 489 U.S. 1051, 109 S.Ct. 1310, 103 L.Ed.2d 579 (1989). Upon examining the intent expressed in the settlement agreement executed between the employer and union when the employer went out of business to pay retirees' life and health benefits, the *New Castle Foundry* court concluded that the agreement extended only to the termination of the collective bargaining contract. Some sections of the contract expressly provided for lifetime benefits. For example, surviving spouses of retirees were provided health insurance for life or until remarriage without regard to age. However,

> The phrase "for life" or similar language is absent from the other provisions ... which describe health insurance coverage for retirees. The failure of the parties to employ the "for life" language ... when referring to retirees indicates that the parties had no intention of providing benefits to those employees until death.

*New Castle Foundry,* 114 L.R.R.M. (BNA) at 3590.

*District 17, UMW v. Allied Corp.,* 735 F.2d 121 (4th Cir.1984), *reh'g en banc,* 765 F.2d 412, *cert. denied,* 473 U.S. 905, 105 S.Ct. 3527, 87 L.Ed.2d 652 (1985), involved a master collective bargaining agreement between the United Mine Workers of America and the Bituminous Coal Operators Association which was renegotiated every three years. The National Bituminous Coal Wage Agreement of 1978 (agreement) provided that every employer would provide through its own insurance carrier health and other benefits for its own employees and retirees and stated: "The benefits provided pursuant to such plans shall be guaranteed during the term of this Agreement by each Employer at levels set forth in such plans." *Allied Corp.,* 735 F.2d at 126; *see id.* at n. 6. The 1981 and 1984 contracts perpetuated this obligation. The 1978 agreement also obligated the employer, upon transferring its assets, to re-

quire purchasing companies to assume its obligations under the agreement. The employer sold its assets in 1980 without requiring the purchaser to assume its obligations. The district court issued an injunction requiring the original employer to continue providing the benefits to retired employees until the employer secured an agreement from its purchasers to assume those obligations. Finding that the collective bargaining agreement required the employer to pay health benefits only during the term of the contract and that the contract had expired, the Fourth Circuit initially reversed, holding that the employer did not violate the agreement by failing to pay for additional benefits. The court stated that absent a clear intention of the parties, employer's obligations and employees' rights do not survive the expiration of the collective bargaining agreement. If the retirees relied on the employer's conduct and statements concerning benefit payments after its assets were transferred, such reliance was not reasonable or detrimental in light of the retirees' knowledge of the provisions of the agreement. *Allied Corp.,* 735 F.2d at 130.

On rehearing, the Fourth Circuit affirmed the injunction, holding that the employer breached its collective bargaining agreement by agreeing with its successors that they would not assume the original employer's contractual obligations. Had the original employer not breached its agreement, its retirees probably would have received insurance coverage from its successors as long as they were in the business of mining coal because they would have been covered pursuant to the 1981 and 1984 agreements. The appropriate remedy, therefore, was to require the original employer to provide the coverage until it secured an obligation to provide coverage from its successors. *Allied Corp.,* 765 F.2d at 417–21.

*District 29, UMW v. Royal Coal Co.,* 768 F.2d 588 (4th Cir.1985), *appeal after remand,* 826 F.2d 280 (1987), *cert. denied,* 485 U.S. 935, 108 S.Ct. 1111, 99 L.Ed.2d 272 (1988), was brought by retired and disabled miners and their widows alleging that ei-

ther the coal company or its benefit plan and trust was obligated to provide them with life and health insurance coverage pursuant to the National Bituminous Wage Agreements of 1978 and 1981. During the term of the 1981 agreement, the employer ceased all active mining operations and did not become a signatory to the 1984 agreement. The district court issued a preliminary injunction requiring the company to provide coverage to its retired and disabled employees, but the Fourth Circuit vacated the injunction and remanded the case for a determination of the benefit plan's obligation to provide the benefits. Unlike Allied, Royal Coal had ceased its operations and had not obligated itself to require a successor to provide benefits to its retirees. The Court noted that although the employer in *Allied Corp.* was liable for damages incurred as a result of its breach of contract, the majority and the dissent both seemed to agree that the employer's contractual obligation to provide benefits does not extend beyond the term of the agreements. Accordingly, the *Royal Coal* court held that the employer's obligation to provide insurance coverage did not extend beyond the expiration of its 1978 and 1981 wage agreements. *Royal Coal,* 768 F.2d at 590–92. *See also Schifano v. UMWA 1974 Benefits Plan and Trust,* 655 F.Supp. 200, 204 (N.D.W.Va.1987).

In *Williams v. Wellman Thermal Systems Corp.,* 684 F.Supp. 584, 593 (S.D.Ind. 1988), the court stated that the parties' intent controls the subject of continuation of the retirees' welfare benefits beyond the termination of the agreement, and "[i]f the parties clearly express their intent in their documents, no genuine issue of material fact would preclude a grant of summary judgment."

As in *Allied Corp.* and *Royal Coal,* the agreements on which this action is based expressed no clear intention of the parties that the employer would continue to provide insurance coverage after the expiration of the agreements. Moreover, the section of the 1985 agreement regarding benefits for Wheelabrator's post–1986 retirees specifically provided for vesting of health care benefits for those retirees and stated

that their coverage would be provided at no cost for life. The absence of any such provision in the section of the agreement covering benefits for pre–1985 retirees indicates that the parties did not intend to provide the same life-long benefit to that group. *See UAW v. New Castle Foundry, Inc.,* 114 L.R.R.M. (BNA) at 3590.

The plaintiffs also claim that the phrases, "after they attain sixty-five years of age", and, "shall be continued for the spouse after the death of the retiree", appearing in their collective bargaining agreements with Wheelabrator are "durational in nature" because they refer to the time the retirees will have benefits paid by the company. This construction of the language does not reflect the document's plain meaning, and the court cannot find from these phrases that Wheelabrator undertook to provide retirees the same level of health benefits for life. Further, the court finds no cases which require such a construction of these phrases.

Nothing in the plan documents states that the welfare benefits provided to pre–1986 retirees became fixed at retirement. Therefore, there is no presumption that these benefits vested upon retirement.

> The mere fact that employee welfare benefits continue into retirement does not indicate that the benefits become vested for life at the moment of retirement. No inference of an attempt to vest can be presumed from the fact that the benefits are retirement benefits. Indeed, the benefits at issue here are "retirement benefits" in a technical sense only. Unlike pension benefits, coverage under the welfare benefit plan does not begin at an employee's retirement. Rather, as plaintiffs themselves strenuously argue, the welfare benefits simply continue when an employee retires. Nothing in the documents establishes retirement as a vesting point.

*Etherington v. Bankers Life and Casualty Co.,* 747 F.Supp. 1269, 1275–76 (N.D.Ill. 1990) (*quoting Howe v. Varity Corp.,* 896 F.2d 1107, 1110 (8th Cir.1990)). The plaintiffs here contend that the welfare benefits they enjoyed as active employees continued

for life because they continued into retirement. This continuation, however, cannot be presumed, but must instead be demonstrated by the parties' clearly expressed intent.

Wheelabrator also relies on *Ryan v. Chromalloy American Corp.,* 877 F.2d 598 (7th Cir.1989), in which retirees sought, pursuant to ERISA and the LMRA, reinstatement of the welfare benefits that were terminated when their employer sold the division in which they had been employed. The court held that the plan documents provided for the right to terminate the plan if the employer's assets were sold, so termination of welfare benefits was permitted under ERISA. The court also held that under the collective bargaining agreements the benefits did not vest, so the retirees were not entitled to relief under the LMRA.

The trust documents governing the benefit program in *Chromalloy American* explicitly provided that,

> ... if, among other things, the company were to sell "all or substantially all of the assets of an employer, then this trust shall be deemed terminated as respects the employees of such employer, unless provision is made whereby this trust will be continued by ... [the] purchaser of all or substantially all of such assets."

877 F.2d at 600. Upon the retirees' failure to demonstrate that a genuine issue of fact existed as to whether all or substantially all of the employer's assets had been sold, the court granted summary judgment.

The plaintiffs note that the retirees were assured that they would have this benefit at the same level for life. Wheelabrator argues that the documents setting forth the agreement control and are unambiguous, and the plaintiffs therefore may not prove intent by extrinsic evidence.

Summary judgment is appropriate in cases involving interpretation of contractual documents.

> [S]ummary judgment should be entered only if the pertinent provisions of the contractual documents are unambiguous; it is the lack of ambiguity within the express terms of the contract that forecloses any genuine issue of material fact.... If a district court determines that the pertinent provisions of the contract are unambiguous, it need not consider extrinsic evidence. At that point, the district court should proceed to declare the meaning of those provisions....

*Chromalloy American,* 877 F.2d at 602; *accord, Metalex Corp. v. Uniden Corp. of America,* 863 F.2d 1331, 1333 (7th Cir. 1988). In *Chromalloy American,* the court determined that this term was unambiguous and no extrinsic evidence was necessary. *See also Etherington v. Bankers Life and Casualty Co.,* 747 F.Supp. at 1276.

In *Moore v. Metropolitan Life Ins. Co.,* 856 F.2d 488 (2d Cir.1988), the court stated that absent a showing of fraud, an ERISA welfare plan that is otherwise unambiguous is not subject to amendment by the informal communications between the employer and the beneficiaries. The court rejected the plaintiffs' argument that the welfare plan at issue became a lifetime benefit because of one summary plan description's failure to state that the employer may alter the welfare plan and because of the employer's filmstrips and other communications describing the plan as a "lifetime" benefit provided "at no cost".

> Congress intended that plan documents and the SPDs [summary plan descriptions] exclusively govern an employer's obligations under ERISA plans. This intention was based on a sound rationale. Were all communications between an employer and plan beneficiaries to be considered along with the SPDs as establishing the terms of a welfare plan, the plan documents and the SPDs would establish merely a floor for an employer's future obligations. Predictability as to the extent of future obligations would be lost, and, consequently, substantial disincentives for even offering such plans would be created.

*Moore v. Metropolitan Life Ins. Co.,* 856 F.2d at 492.

ERISA requires that "[e]very employee benefit plan ... be established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a)(1). "The writing re-

quirement is a central feature of ERISA, not a mere technicality. It secures to the plan's participants and administrators a clear understanding of their rights and obligations." *Saret v. Triform Corp.*, 662 F.Supp. 312, 316 (N.D.Ill.1986).

The informal communications between Wheelabrator and retiring employees should not be considered in determining Wheelabrator's obligations. Instead, the plan documents themselves must govern. While ERISA may permit parties to provide for vesting of welfare benefits, the court must look to the plan documents to see whether the parties have done so.

The plaintiffs argue that Wheelabrator incorrectly relies upon the insurance policies and the Master Operating Agreement to demonstrate its right to alter or terminate the retirees' benefits, whereas the collective bargaining agreements set forth Wheelabrator's obligations to its retirees. Wheelabrator argues that the collective bargaining agreements do not meet the requirements of 29 U.S.C. § 1102, but to the extent that they provide for benefits, they may be considered along with the formal plan documents. In *Ryan v. Chromalloy American Corp.*, 877 F.2d at 604, the court found the entry of summary judgment on both ERISA and LMRA claims appropriate based on the language of the group benefit program documents, the summary plan description and the collective bargaining agreements. *See also Musto v. American General Corp.*, 861 F.2d 897, 902–04 (6th Cir.1988), *cert. denied*, 490 U.S. 1020, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989); *Etherington v. Bankers Life and Casualty Co.*, 747 F.Supp. at 1278–79.

In this case, an examination of the formal plan documents and the collective bargaining agreements reveals no intention on Wheelabrator's part to provide pre-1986 retirees the same level of benefits at no cost for life. The Master Operating Agreement explicitly reserved Wheelabrator's right to terminate the policy. None of the documents setting forth the agreements between Wheelabrator and its employees show that Wheelabrator promised to provide the extent and duration of benefits the plaintiffs claim. The only references to the coverage the plaintiffs claim is found in communications—a document used at a union ratification meeting, letters to retirees from company officials, discussions between a union official and retiring employees—other than those documents that must govern this action. For this reason, the plaintiffs' LMRA and ERISA claims must fail and the defendant's motion for summary judgment should be granted as to Counts I and II. Because the court concludes that summary judgment should be granted in the defendant's favor, the issues raised in the defendant's motion regarding the plaintiffs' entitlement to attorney fees and extracontractual damages need not be decided.

V.

For the foregoing reasons, the court hereby:

(1) GRANTS the defendant's motion for summary judgment;

(2) DENIES the defendant's motion to dismiss;

(3) DENIES the plaintiffs' motion for summary judgment; and

(4) DENIES as moot the defendant's motion to strike the jury demand.

SO ORDERED.