John RYAN, et al., on behalf of himself and a class of others similarly situated, Plaintiffs–Appellants,

v.

CHROMALLOY AMERICAN CORPORATION, Defendant–Appellee.

No. 87–2669.

United States Court of Appeals, Seventh Circuit.

Argued April 7, 1988.
Decided June 20, 1989.

Don J. McRae, Don J. McRae & Associates, Kewanee, Ill., Barry Barash, Barash Stoerzbach & Henson, Galesburg, Ill., for plaintiffs-appellants.

Richard Martin Lyon, Seyfarth Shaw Fairweather & Geraldson, Raymond J. Kelly, Mark A. Casciari, Chicago, Ill., for defendant-appellee.

Before BAUER, Chief Judge, and COFFEY and MANION, Circuit Judges.

MANION, Circuit Judge.

Plaintiffs, retired hourly employees of Chromalloy American Corporation ("Chromalloy"), appeal from the district court's order granting summary judgment for the defendants in this class action involving claims under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*, and Section 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a). The plaintiffs seek reinstatement of their retiree welfare benefits, which were terminated by Chromalloy after it sold its Kewanee Division where plaintiffs were employed. For the reasons outlined below, we affirm.

## I. *Background*

In 1972, Chromalloy purchased Kewanee Machinery & Conveyor Co., which consisted of manufacturing plants located in both Kewanee, Illinois and Kirksville, Missouri ("Kewanee Machinery Division" or "Division"). Chromalloy maintained the predecessor company's existing Group Benefit Program according to the governing trust, program, and plan documents. In 1978, Chromalloy bought a third manufacturing plant located in Evansville, Indiana, and merged it into the Division. It amended the Group Benefit Program documents to extend coverage to the employees of the new facility.

The Group Benefit Program ("Program") provided for "death, accident and sickness, hospital, surgical, medical expense and extended compensation benefits for [the Divisions'] employees and retired employees and their eligible dependents." More specifically, eligible retired hourly employees and their dependents were covered for basic hospital, surgical, and medical expenses up to the age of 65. After the age of 65, the retiree's hospital, surgical, and medical coverage was not only limited in its scope, but also to an overall lifetime total of $5000 in coverage per person.

Each of the documents governing the Program contained either an express termination clause or a reference to the Division's right to terminate the entire program or plan. Article IX–3 of the Trust document, for example, stated that if, among other things, the company were to sell "all or substantially all of the assets of an employer, then this trust shall be deemed terminated as respects the employees of such employer, unless provision is made whereby this trust will be continued by ... [the] purchaser of all or substantially all of such assets." Section 7.10 of the Program document entitled *"No Vested Interest"* stated that:

> Except as otherwise expressly provided in subsection 8.3 and except with respect to his rights to receive any benefits that shall have accrued under the contract, no person shall have any right, title, or interest in or to the assets of the fund, or in or to any company contributions thereto, such contributions being made to and held under the trust fund for the sole purpose of providing benefits under the program in accordance with its terms.

In turn, Section 8 of the Program document authorized the Division to amend or terminate the Program. Specifically, Section 8.1 entitled *"Termination"* expressly provided that the "program, the trust agreement and any portion of the contract providing non-insured benefits may be terminated by the division at any time ..."

The only limitation on this right was contained in Section 8.3, which prescribed the manner in which any excess assets of the Program were to be disposed of upon termination. Similarly, the Plan document provided that:

The Plan Administrator reserves the right to amend, modify or terminate this Plan at any time, provided, however, no amendment, modification, or termination shall adversely affect the right of a Covered Person to receive reimbursement for medical expenses incurred by reason of an illness or injury for which he was receiving medical treatment at the time of such amendment, modification or termination.

Finally, the Summary Plan Descriptions distributed to the hourly employees of each of the three Kewanee Division plants set forth the respective schedule of benefits for eligible employees and their dependents, and made clear that:

This booklet is a Summary Plan Description. It is intended to explain the benefits provided by the Kewanee Machinery Division of Chromalloy American Corporation Group Benefit Program. It does not constitute the Plan. Your rights and benefits are determined in accordance with the provisions of the Plan.

\* \* \* \* \* \*

*Individual Termination of Coverage.* The coverage of any covered person under the plan shall terminate on the earliest of the following dates:

1) the date of termination of the Plan;
2) the date employment terminates for reasons other than leave of absence, disability, retirement or death of employee;

\* \* \* \* \* \*

4) the date all coverage or certain benefits are terminated in a particular class by modification of the Plan;

\* \* \* \* \* \*

*Collective Bargaining Agreement.* This plan is referred to in the Collective Bar-gaining Agreement between Kewanee Machinery Division and Local 21, International Brotherhood of Teamsters and in the Collective Bargaining Agreement between Kewanee Machinery Division and Local 208, International Brotherhood of Boilermakers. Copies are available upon written request to the Plan Administrator.[1]

The collective bargaining agreements between both the Kewanee and Evansville plants and their respective unions made the following reference to the plan:

SECTION 3—Retiring employees who are eligible for pension benefits as established in the Hourly Employees' Pension Trust and their dependents, if insured at the time of retirement, will be provided life insurance [employee only], sickness and accident and hospitalization insurance at no cost to the employee. Benefits will be similar to those provided active employees except they will be less and more limited in certain coverages as recommended by the insurance company and will not duplicate the Medicare Program.

\* \* \* \* \* \*

SECTION 5—The Company will provide and distribute to employees a booklet describing the insurance plan and benefits.

The collective bargaining agreement at the Kirksville, Missouri plant did not contain any references to coverage for retired employees.

On October 7, 1983, Chromalloy sold the assets of the Kewanee Machinery Division to the Allied Products Corporation ("Allied"). Although Allied chose not to maintain the Division's Group Benefits Program, Chromalloy continued to pay welfare benefits under the plan up to June 30, 1984, because approximately $100,000 remained in the Trust, and in accordance with paragraph 8.3 of the Program, had to be distributed to covered employees until the funds were exhausted. On May 10, 1984, Chro-

---

1. The Summary Plan Description for the employees of the Evansville plant contained substantially the same language with the exception that the collective bargaining agreement clause referred to Local 904 of the International Brotherhood of Boilermakers, which represented the hourly employees of that plant.

malloy notified all of the plan participants that it was terminating their benefit coverage as of June 30, 1984.

John Ryan, a retired hourly employee of the Division, brought suit and subsequently became the named plaintiff representing a class certified by the district court on May 14, 1986, and defined in a supplemental order as follows:

> All former hourly employees of the Kewanee Machinery Division of Chromalloy American Corporation including its Kewanee, Illinois, Evansville, Indiana and Kirksville, Missouri plants, eligible for pension benefits under the Kewanee Division hourly pension plan on or before October 7, 1983, and their dependents, all of whom would be eligible for benefits under the Chromalloy American Corporation Group Benefit Trust, Program, and Plan (together constituting an "employee welfare benefit plan" as defined in 29 U.S.C. Sec. 1002(1), (3)), but for its termination on October 7, 1983.

Plaintiffs' third amended complaint consisted of one count under Section 502 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132,[2] and a second count under Section 301(a) of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a).[3] Plaintiffs allege that their retirement benefits, which constituted a welfare benefit plan under ERISA, vested upon their retirement. Defendant moved for summary judgment, arguing that no genuine issues of material fact existed since plaintiffs' benefits did not vest under the applicable provisions of ERISA, the governing plan documents, or the collective bargaining agreements between Chromalloy and the respective unions representing the hourly employees at each of the three plants within the Division. The plaintiffs filed their own motion for summary judgment, and the district court, after reviewing the submissions of the parties, concluded in a thorough opinion that the governing plan documents unambiguously provided for the right to terminate the plan. Accordingly, the court rejected the plaintiffs' motion for summary judgment and granted the defendant's. On appeal, the plaintiffs-appellants contend that the district court erred because certain extrinsic evidence and inferences to be drawn from the record preclude the grant of summary judgment. Appellants also argue that they are entitled to summary judgment on their claim under the LMRA since the welfare benefits vested under the terms of the collective bargaining agreements.

## II. *Analysis*

■ This court has recognized that summary judgment is particularly appropriate in cases involving the interpretation of contractual documents. *Metalex Corp. v. Uniden Corp. of America*, 863 F.2d 1331, 1333 (7th Cir.1988). In that context, summary judgment should be entered only if the pertinent provisions of the contractual documents are unambiguous; it is the lack of ambiguity within the express terms of the contract that forecloses any genuine issues of material fact. *Id.* If a district court determines that the pertinent provisions of the contract are unambiguous, it need not consider extrinsic evidence. At that point, the district court should proceed to declare the meaning of those provisions, an interpretation which this court reviews *de novo* as a question of law. *Id. See also Bower v. Bunker Hill Co.*, 725 F.2d 1221, 1223 (9th Cir.1984).

■ On appeal, appellants concede that it was appropriate to grant summary judgment on their claim that their retiree wel-

---

2. In pertinent part, § 1132 empowers a plan participant or beneficiary to bring a civil action "to recover benefits due him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

3. Section 185(a) provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

fare benefits automatically vested under the provisions of ERISA. Appellants now recognize that their claims concern the termination of "employee welfare benefits" [4] and that Congress explicitly exempted such welfare benefits from the statute's accrual, vesting, and funding requirements. *Massachusetts v. Morash*, — U.S. ——, 109 S.Ct. 1668, 1675, 104 L.Ed.2d 98 (1989) (citing 29 U.S.C. §§ 1051(1), and 1081(a)). Therefore, the efficacy of appellants' claim under ERISA turns solely upon the terms of the written instruments governing the plan.

 ERISA requires that "[e]very employee benefit plan ... be established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a)(1). Through those instruments, the parties are free to subject such welfare benefits to vesting requirements not provided by ERISA, or they may reserve the power to terminate such plans. As the Sixth Circuit has stated in *Hansen v. White Farm Equipment Co.*, 788 F.2d 1186 (6th Cir.1986), "the parties may themselves set out by agreement or by private design, as set out in plan documents, whether retiree welfare benefits vest, or whether they may be terminated." *Id.* at 1193. *See also Musto v. American General Corp.*, 861 F.2d 897, 907 (6th Cir. 1988), *cert. denied*, — U.S. ——, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989). The district court in the present case relied on the Sixth Circuit's decision in *White Farm* and reviewed the governing plan documents to determine their scope. We agree with the district court's decision, which reflects a careful examination of the documents, that they unambiguously provided for the right to terminate the plan.

 The Trust document provided that the Trust would be terminated if "all or substantially all" of the assets of an employer were sold, the very contingency at issue here. On this point, Chromalloy submitted the affidavit of Richard Mueller, who served as the director of the company's employee benefits program as well as one of the plan trustees. Mueller stated that as of October 7, 1983, Chromalloy sold all or substantially all of the assets of its Kewanee Machinery Division to Allied. The appellants suggest on appeal that it is not clear whether "all or substantially all" of the Kewanee assets were sold, thus giving rise to a genuine issue of material fact rendering the entry of summary judgment improper. The district court did not address this issue, and with good reason. As far as we can tell from the record, the appellants failed to adequately raise this claim before the district court. Appellants' failure may well be attributable to the fact that they filed a cross-motion for summary judgment, thereby agreeing that no genuine issues of material fact existed. Nonetheless, the appellants' position before the district court did not relieve them of their burden as the nonmovants relative to the defendant's motion for summary judgment. Accordingly, the appellants were required to set forth specific facts showing why summary judgment on behalf of the defendants was not appropriate. Fed.R.Civ.P. 56(c). In light of their failure to do so, appellants have waived this issue under the long-standing rule that "a party opposing a summary judgment motion must inform the trial court of the reasons, legal or factual, why summary judgment should not be

4. ERISA's extensive regulations extend to "employee benefit plans" which, in turn, are divided into two categories. Congress distinguished "employee pension benefit plans" from "employee welfare benefit plans," *compare* 29 U.S.C. § 1002(2)(A) *with* § 1002(1), and explicitly exempted the latter from the full breadth of the statute's requirements. Welfare benefit plans are defined as:

 [A]ny plan, fund, or program which was heretofore or is hereafter *established* or maintained by an employer or by an employee organization, or by both, to the extent that such plans, fund, or program was established

or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers or scholarship funds, or prepaid legal services, or (B) any benefit described in section 185(c) of this title (other than pension or retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1002(1).

entered. If it does not do so, and loses the motion, it cannot raise such issues on appeal." *McNeil v. Springfield Park District*, 851 F.2d 937, 946 (7th Cir.1988) (quoting *Liberles v. County of Cook*, 709 F.2d 1122, 1126 (7th Cir.1983)). We are unable to reach the merits of this issue.

With reference to the remaining plan documents, both the Program and Plan documents specifically provided that the plan could be terminated at any time. Finally, the Summary Plan Descriptions distributed to the employees of each of the plants within the Division all emphasized that the beneficiaries' "rights and benefits are determined in accordance with the provisions of the Plan," and that individual coverage would terminate with "the date of termination of the Plan." The appellants argue that this reading of the Summary Plan Description is erroneous because the termination language falls under the heading INDIVIDUAL TERMINATION OF COVERAGE rather than the specific heading for RETIREE BENEFITS. We find this argument unavailing based on our own reading of the Summary Plan Description as an integrated whole so that all of the provisions, if possible, will be given effect. *Musto v. American General*, 861 F.2d at 906 (citing *International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America v. Yard-Man, Inc.*, 716 F.2d 1476, 1479 (6th Cir. 1983)). To begin with, the section on retiree benefits merely explained the extent of the benefits provided under the plan. It makes no reference to the retiree's vested right to the benefits. Furthermore, we are persuaded that the coverage of retirees was fully embraced in the provisions referring to "any Covered Person under the Plan." For example, the preceding section dealing with the nature of coverage for various types of employees noted that coverage for retirees is available to those who are eligible for pension benefits—that is, "any Covered Person under the Plan." We can not accept appellants' attempt to read the parts of the Summary Plan Description

in isolation. In sum, the district court's order of summary judgment on the appellants' count under ERISA was appropriate.

We also agree with the district court's determination that appellants' benefits did not vest under the provisions of the collective bargaining agreements at the Kewanee and Evansville plants.[5] The language in Section 3 of these collective bargaining agreements (under the heading "Group Insurance"), the provision upon which appellants most heavily rely, merely refers to a retiree's eligibility for welfare benefits. Section 3 contains no references to the duration of the benefits or whether they vest upon retirement. On the contrary, Section 5 of the agreements (both under the same heading) makes reference to the fact that a booklet describing the plan would be distributed by the company, presumably the Summary Plan Descriptions, which, as we have previously emphasized, expressly referred to the fact that individual coverage was governed by the Program documents and would terminate upon the termination of the plan. Accordingly, the district court's entry of summary judgment on behalf of the defendant was also appropriate with regard to appellants' claim under Section 301(a) of the LMRA.

The district court's order of summary judgment on behalf of the defendants is, in all respects,

AFFIRMED.

---

**5.** The appellants' claim that their benefits vested under the terms of the respective collective bargaining agreements can not be sustained with regard to the hourly employees at the Kirksville facility since that agreement contained no provisions affecting benefits for retired employees.