963 F.2d 375
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Ignacio CASTANEDA and Joseph Klaw, individually and on
behalf of all others similarly situated,
Plaintiffs-Appellees,
v.
GREYHOUND RETIREMENT AND DISABILITY PLAN and Greyhound
Lines, Inc.--Amalgamated Council Retirement and
Disability Trust, Defendants-Appellants.
 No. 91-2455.
 United States Court of Appeals, Seventh Circuit.
 May 22, 1992.*
Rehearing and Rehearing En Banc
Denied July 21, 1992.
 
 Appeal from the United States District Court for the Northern District of Illinois, Eastern Division; No. 88-C-4184, William T. Hart, Judge.
 REVERSED AND REMANDED.
 
 ORDER
 
 1
 Greyhound Retirement and Disability Plan and its successor, Greyhound Lines, Inc.--Amalgamated Council Retirement and Disability Trust (referred to collectively as the Plan), appeal the district court's grant of summary judgment in favor of a class of former employees of Greyhound's Chicago terminal (referred to collectively as the Chicago Employees). The district court held that the Chicago Employees were entitled to withdraw their contributions upon termination. For the following reasons, we reverse the judgment of the district court and remand for further proceedings.
 
 
 2
 * BACKGROUND
 
 A. Facts
 
 3
 At issue in this case is both the meaning of certain sections of the retirement plan and the intention of the parties who negotiated the collective bargaining agreement of which the plan was one result. A brief outline of those negotiations is therefore necessary.
 
 1. The 1983 negotiations
 
 4
 The Chicago employees of Greyhound Lines, Inc. (Greyhound) were members of the United Auto Workers, but were covered by a retirement plan negotiated by the Amalgamated Council of Greyhound Local Unions, Amalgamated Transit Union (ATU). Greyhound and ATU negotiated a new collective bargaining agreement in 1983.
 
 
 5
 The version of the retirement plan in effect at the time of the negotiations (the 1977 plan) allowed all employees who were terminated to obtain a refund of their contributions with interest.[1] During the 1983 negotiations, Greyhound proposed the following change in the retirement plan:
 
 
 6
 A participant who has less than 10 years of credited service and terminates his employment other than by reason of early, normal or deferred retirement, who is not entitled to a disability allowance, shall be entitled to receive a refund of his contributions to the Plan with interest at 5% compounded annually to his date of termination.
 
 
 7
 R. 39, Green affidavit at 2. This change was ultimately accepted by ATU and ratified by its members. R. 39, Butler certification at 3.
 
 2. The 1984 Plan
 
 8
 Shortly after the negotiations concluded, Plan Administrator Edward Ploski sought clarification of the meaning of this provision. Both Greyhound's chief negotiator and ATU's chief negotiator indicated that the provision meant that only nonvested participants now would be allowed to withdraw their contributions immediately upon termination. R. 39, Green affidavit at 5; R. 39, Ploski affidavit at 3. (To be vested requires the employee to be at least thirty-two years old, with ten or more years of service.) In a July 5, 1984 letter to the new union president and to Greyhound's negotiator, Mr. Ploski confirmed this understanding: "It was agreed that Vested Participants would not be entitled to a refund of Employee Contributions, to be consistent with the recently negotiated changes on refunds of contributions for non-vested persons from January 1, 1984." R. 39, Green ex. at tab 4 (emphasis in original).
 
 
 9
 Although the new collective bargaining agreement was effective retroactively as of November 1, 1983, the new retirement plan provision regarding refund of contributions did not go into full effect immediately. Trustees of the Plan, who included both the chief union and chief company negotiator, approved the provision on January 10, 1984 (the plan as revised will be referred to in its entirety as the 1984 Plan). R. 39, Ploski ex. at tab 4. However, it was later agreed that the provision would be enforced for contributions made prior to January 1, 1984, only after issuance of a revised plan booklet. R. 39, Ploski ex. at tab 6. In addition, an "exception" was made for a group of employees who terminated as a result of the transfer of their positions from Cleveland and St. Louis to Des Moines, Iowa. R. 39, Ploski affidavit at 5; R. 39, Ploski ex. at tab 7. The Plan's trustees agreed to this refund only after Greyhound and ATU had negotiated the refund, as section 23 of the 1984 Plan authorized. See 1984 Plan[2] at 35; R. 39, Green affidavit at 6.
 
 
 10
 The new plan booklet was issued in August 1985. Section 14-A of the 1984 Plan outlined the retirement benefits available to vested participants, and section 14-B outlined an option for a reduced early retirement allowance. Section 14-C covered the right to elect return of contributions:
 
 
 11
 Upon termination of employment without being qualified for a Deferred Vested Retirement Allowance under Section 14-A., a Participant's Employee Contributions with Interest shall be returned to him.
 
 
 12
 In addition, if any Employee became a Participant before January 1, 1975 and has five (5) but less than ten (10) years of Vesting Service at the date of termination of such Vesting Service (or had more than ten (10) years of Vesting Service but has not attained age 32), he shall receive two percent (2%) of his wages for work as an Employee during each year of participation in the Plan during which contributions to the Plan were not required, with interest computed annually at a rate of three percent (3%).
 
 
 13
 Should a Participant, upon termination of Continuous Service, elect to receive a refund of his Employee Contributions with Interest under the provisions of this Section 14-C., the Retirement Allowance determined under Section 14-A. or 14-B. will be reduced by an amount equivalent in value to such refund, as prescribed by Section 204(c) of ERISA [Employee Retirement Income Security Act of 1974].
 
 
 14
 1984 Plan at 29. The Plan notified participants that section 14-C meant that vested participants would "no longer receive a refund of any employee contributions" if they terminated after January 1, 1986. R. 39, Green ex. at tab 5 (emphasis in original).
 
 
 15
 In March 1987, Greyhound closed its Chicago terminal operation and thus terminated the employment of the named plaintiffs and other employees. At the time of their termination, the named plaintiffs were vested participants in the retirement plan. Following their termination, they requested return of their contributions with interest, but the Plan refused their request. This suit followed.
 
 B. The District Court Opinion
 
 16
 The Chicago Employees sought a declaratory judgment that section 14 of the 1984 Plan required the Plan to give them "the option of recovering their individual employee contributions, plus interest." R. 24 at 6-7. They also sought injunctive relief, attorney's fees, and other relief. Id. at 7.
 
 
 17
 On crossmotions for summary judgment, the district court held that the Plan was liable to class members to refund "their contributions in accordance with the provisions of Section 14-C" of the 1984 Plan. Memorandum Opinion and Order, No. 88 C 4184 at 15 (Oct. 26, 1989). The court also "reserve[d] jurisdiction to grant relief to enforce this judgment." Id. The court cited section 1-C of the 1984 Plan, which provided that, under the new plan, participants as of December 31, 1983 would "receive no less than the amount and type of benefit" available under the 1977 Plan. Id. at 6. The court also reasoned that section 14-C of the 1984 Plan "unambiguous[ly] ... provides that if an employee is not qualified for a Deferred Vested Retirement Allowance under Section 14-A upon his or her termination, he 'shall have his contributions with interest returned to him.' " Id. at 12. The court next cited section 14-C to indicate that employees could elect to seek a refund of contributions. Id. The court added that the summary section of the new plan booklet[3] "supports this interpretation." Id. Finally, the court concluded that the refusal by the Plan's trustees to return the contributions of the Chicago Employees was "arbitrary and capricious," id. at 14, especially because the Plan had returned contributions of those Cleveland and St. Louis employees who had refused to accept transfer to Des Moines. Id. at 8, 11, 13.
 
 C. Earlier Appeal
 
 18
 An appeal was taken from the district court's judgment to this court. We held that the judgment was not final because it was unclear whether the district court had terminated the litigation. Now that final judgment has been entered in the district court, the case is here for adjudication on the merits.
 
 II
 ANALYSIS
 A. Standard of Review
 
 19
 It is well established that review of a district court's grant of summary judgment is de novo. See, e.g., Wolf v. Larson, 897 F.2d 1409, 1411 (7th Cir.1990). Summary judgment is suitable in a case of this type "only if the pertinent provisions of the contractual documents are unambiguous; it is the lack of ambiguity within the express terms of the contract that forecloses any genuine issues of material fact." Ryan v. Chromalloy Am. Corp., 877 F.2d 598, 601 (7th Cir.1989).
 
 
 20
 Because the 1984 Plan gives the trustees power "[t]o decide any question arising in the administration, interpretation, and application of this Plan," 1984 Plan at 18, the district court rejected use of a stricter de novo standard and applied an arbitrary and capricious standard. Mem. op. at 11. See Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989) (adopting de novo review in ERISA cases involving plans that give trustees no "discretionary authority to determine eligibility for benefits or to construe the terms of the plan"); Sisters of the Third Order of St. Francis v. SwedishAmerican Group Health Benefit Trust, 901 F.2d 1369, 1371 (7th Cir.1990) (discussing application of Firestone ). We believe that the use of a deferential standard of review was appropriate in this case. See Allison v. Dugan, 951 F.2d 828, 832 (7th Cir.1992).
 
 B. Application to This Case
 1. Plan language
 
 21
 We find ourselves in respectful disagreement with the district court's conclusion that the 1984 Plan is sufficiently unambiguous to make summary judgment suitable in this case. First, section 1-C, which assures participants that under the 1984 Plan they would "receive no less than the amount and type of benefit" provided under the 1977 Plan, is applicable to this case only if the right to withdraw contributions is a "type of benefit." The following language from the summary section of the revised plan booklet would be internally inconsistent if the right to a refund was a "benefit": "If you terminate your employment (other than by retirement) before you are vested, you will not be entitled to any pension benefit under the Plan. However, if you ever contributed to the Plan, you will receive all your contributions plus interest as stated in the Plan." 1984 Plan at 6 (emphasis supplied). Furthermore, the 1984 Plan does not define the word "benefit" itself, but does define "Basic Benefit" to include only monthly annuities payable upon retirement. 1984 Plan at 14, 19. Section 14, which includes the provision regarding return of contributions upon termination, is titled "Termination Benefits." Id. at 29. Nonetheless, when that section is read as a totality, it is likely that the general title of that section refers to the annuity provisions of sections 14-A and 14-B rather than to the return of contribution provisions in section 14-C.
 
 
 22
 More fundamentally, section 14-C of the Plan does not unambiguously support the position of the Chicago Employees. The district court cited the first paragraph of section 14-C, which appears to require the return of contributions for nonvested participants: "Upon termination of employment without being qualified for a Deferred Vested Retirement Allowance under Section 14-A, a Participant's Employee Contributions with Interest shall be returned to him." 1984 Plan at 29 (emphasis supplied). But because the Chicago Employees are vested and thus eligible under section 14-A, this provision clearly does not apply to them. This reading of the 1984 Plan is buttressed by the fact that the corresponding provision in the 1977 Plan had given all employees--vested or nonvested--the option to have their contributions returned. See supra, n. 1.
 
 
 23
 The third paragraph of section 14-C is somewhat more problematical. It can be read as simply stating a formula for the recoupment of contributions by employees who are nonvested participants because its first clause speaks in terms of "a Participant" who elects a refund "under the provisions of this section 14-C." On the other hand, it provides that those who elect to have their contributions returned shall have their annuities under section 14-A or 14-B correspondingly reduced. 1984 Plan at 29. Because only vested participants are covered by the latter two sections, section 14-C might be read as giving vested participants a right to demand a refund of their contributions. It is also possible that, as the Plan maintains, this paragraph was included to assure that those participants who had received a refund prior to 1984 could not now claim a full retirement allowance. Indeed, Plan Administrator Ploski indicated that the language was included for this reason. R. 39, Ploski affidavit at 7.
 
 
 24
 Finally, we do not find dispositive the language from the summary section of the revised plan booklet: "If you terminate your employment (other than by retirement) before you are vested, you will not be entitled to any pension benefit under the Plan. However, if you ever contributed to the Plan, you will receive all your contributions plus interest as stated in the Plan." 1984 Plan at 6 (quoted in Mem. op. at 13). Read in context, the second sentence appears to apply only to the nonvested participants referred to in the first sentence. Because the Chicago Employees are vested, this provision would thus not apply to them. More important, the summary section later makes clear that refund of contributions is available "if you terminate before you are vested." Id. at 9.
 
 
 25
 We cannot say, on this record, and under the applicable deferential standing, that the trustees did not act in accordance with the documents and instruments governing the Plan. See 29 U.S.C. § 1104(a)(1). Because the language of the 1984 Plan itself certainly does not unambiguously support the position of the Chicago Employees, on remand the district court must examine the intent of the parties who negotiated the collective bargaining agreement. See Ryan v. Chromalloy Am. Corp., 877 F.2d 598, 601 (7th Cir.1989). That inquiry seems especially useful here because the Plan trustees included the chief negotiators for both the company and the union. It is clear, however, that it was premature to terminate this case by summary judgment on this record.
 
 Conclusion
 
 26
 For the foregoing reasons, the judgment of the district court is reversed and the case is remanded for further proceedings consistent with this opinion.
 
 REVERSED AND REMANDED
 
 
 *
 On November 22, 1991, the court ordered that this case be decided on the briefs submitted in the earlier appeal (89-3457). The court also determined that further oral argument would not be helpful to the court
 
 
 [1]
 Subsection 14(c)(1) of the 1977 Plan read in pertinent part: "An employee is entitled to elect to have all contributions made by him returned to him with interest compounded annually (2% up to October 31, 1962, 3% from November 1, 1962)...." R. 39, Ploski ex. at tab 1
 
 
 [2]
 Citations to the 1984 Plan are to the plan booklet (dated August 23, 1984, but not issued until August 1985), which is appended to the original complaint in this case (R. 1)
 
 
 [3]
 The summary section of the booklet includes the following language: "If you terminate your employment (other than by retirement) before you are vested, you will not be entitled to any pension benefit under the Plan. However, if you ever contributed to the Plan, you will receive all your contributions plus interest as stated in the Plan." 1984 Plan at 6 (quoted in Mem. op. at 13)