Michael J. VALLONE, et al., Plaintiff,

v.

CNA FINANCIAL CORPORATION,
a/k/a CNA Casualty of Illinois,
et al., Defendants.

No. 98 C 7108.

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 28, 2000.

William J. Sneckenberg, Stuart Morris Brody, William J. Sneckenberg & Associates, Chicago, IL, for Plaintiffs.

Thomas James Piskorski, Timothy F. Haley, Ronald J. Kramer, Beth Tracey Golub, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

MORAN, Senior District Judge.

Plaintiffs Michael J. Vallone, Joyce E. Heidemann and James O'Keefe (collectively "plaintiffs") bring this putative class action against defendants CNA Financial Corporation and the Continental Insurance Company (collectively "CNA") alleging violations of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.*, as well as common law offenses. CNA moves for summary judgment against all counts contained in the complaint. For the reasons set forth below, CNA's motion is granted in part and denied in part.

## BACKGROUND

Plaintiffs are former employees of CNA who elected to take early retirement from

the company in 1992 pursuant to a Voluntary Special Retirement Program (VSRP). The VSRP provided early retirees with special health care benefits that differed from the benefits extended to regular retirees under CNA's Comprehensive Health Care and Dental Plan (the Plan). One such feature involved the Retiree Health Care Allowance, a subsidy provided by CNA to help offset the costs of health care benefits for its retirees. Under the Plan, employees had to retire at age 62 or older and have 25 years or more of service to qualify for the maximum retiree health care allowance. An employee retiring before the age of 62, or with less than 25 years of service, would receive a reduced health care allowance. In contrast, early retirees under the VSRP were to receive the maximum health care allowance regardless of their age or years of service. Features such as this one enticed plaintiffs and hundreds of others to take early retirement in 1992 under the VSRP.

In August 1998, CNA informed all retired former employees that the retiree health care allowance benefit would be terminated as of December 31, 1998. Upset by this action, some individuals who had taken early retirement under the VSRP complained to CNA, arguing that early retirees were given a lifetime health care allowance that was not subject to change. In August and September 1998, plaintiffs Vallone and Heidemann telephoned CNA officials to complain about the termination of benefits but were told that CNA's actions were appropriate and final. Two other early retirees, Bernard A. Serek and Thomas L. Jones, lodged written complaints with CNA in September 1998. The

company's Claims Administrator rejected the complaints several weeks later and Serek and Jones subsequently appealed to the Plan Administrator. In February 1999, the Plan Administrator denied their written appeals, stating that early retirees were not provided with a lifetime health care allowance and that CNA's decision to terminate those subsidies was appropriate and final.

Angered by CNA's refusal to maintain the health care allowance for early retirees, and spurned by the Plan Administrator,[1] plaintiffs turned to the courts for relief. Plaintiffs' first amended complaint, filed on February 25, 1999, raises a number of different causes of action under statutory and common law. Plaintiffs seek a claim for benefits under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B) (counts I and II), allege breach of fiduciary duty in violation of Section 404 of ERISA, 29 U.S.C. § 1104 (count III), and assert common law claims of breach of contract (count IV) and equitable estoppel (count V).[2]

■ On May 16, 2000, we stayed discovery based on *Perlman v. Swiss Bank Comprehensive Disability*, 195 F.3d 975, 981–82 (7th Cir.1999) (holding that review should be limited to the administrative record). *Vallone v. CNA Financial Corp.*, 2000 WL 1015936 (N.D.Ill. May 16, 2000). Following our order, CNA moved for summary judgment against all counts in the complaint. In response, plaintiffs have withdrawn count I, recognizing that it essentially is redundant of count II. They have also abandoned count III for now, stating that they cannot defend that claim without further discovery (Pl. Br. at 13 n. 2).[3] Plaintiffs contest the motion with re-

---

1. Although plaintiffs did not file formal complaints with the Plan Administrator, we excused their failure to do so as futile since plaintiffs had unsuccessfully complained to CNA officials about the termination of benefits, and Serek and Jones—similarly situated early retirees—had exhausted the Plan's procedures by unsuccessfully filing written appeals with the Plan Administrator. *Vallone v. CNA Financial Corp.*, 76 F.Supp.2d 864 (N.D.Ill.1999).

2. Plaintiffs place their prayers for relief collectively in count VI.

3. As CNA points out, an employer may modify or terminate a welfare benefit without implicating its fiduciary duties under ERISA. *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 443–44, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999); *Lockheed Corp. v. Spink*, 517 U.S. 882, 890, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996); *Curtiss–Wright Corp. v. Schoonejongen*, 514

spect to the remaining counts, however, and we review the arguments of both sides under the familiar summary judgment standards embodied in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## DISCUSSION

### I. *ERISA Claim for Benefits*

#### A. *Standard of Review*

██ The claims raised in count II were considered and rejected by the Plan Administrator. We are to review such a denial of benefits *de novo* unless the benefit plan authorizes the administrator to exercise discretionary power to determine eligibility for benefits or to construe terms of the plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). If discretionary authority is conferred upon the administrator, our review is to be under an arbitrary and capricious standard. Our first task, therefore, is to examine the Plan's language to determine whether it provides discretionary authority to the Plan Administrator. We are guided in this endeavor by *Herzberger v. Standard Ins. Co.*, 205 F.3d 327 (7th Cir.2000), in which the Seventh Circuit clarified the standards on the subject and even suggested non-mandatory "safe harbor" language that, if included in an ERISA plan, would trigger deferential review under *Firestone*.[4] *Herzberger* holds that the conferral of discretion must be clear since "employees are entitled to know what they're getting into." *Id.* at 332–33. Deferential review will be accorded to an administrator's decisions if the plan's language "indicates with the requisite if minimum clarity that a discretionary determination is envisaged." *Id.* at 331.

In this case the Plan contains a number of relevant provisions regarding the authority of the Plan Administrator. Claims procedures are described in Article V of the Plan, which states in Section 5.1: "All questions relating to eligibility, classification, or coverage under the Plan shall be submitted to the Plan Administrator" (CNA Exh. 1, § 5.1). More importantly, Article VI discusses administration of the Plan and Section 6.5 contained therein details the nature of the Plan Administrator's duties:

*Plan Administrator's Responsibilities.*

The Plan Administrator shall have the authority and responsibility for:

\* \* \* \* \* \*

(b) establishing the policies, interpretations, practices and procedures of this Plan, except to the extent such responsibility has been allocated to the Claims Administrator or retained by the Employer;

\* \* \* \* \* \*

██ (i) Any discretion or judgment to be exercised by the Plan Administrator

U.S. 73, 78, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995); *Johnson v. Georgia–Pacific Corp.*, 19 F.3d 1184, 1188 (7th Cir.1994). There are allegations in the complaint and an affidavit in the record, however, suggesting that CNA officials may have misrepresented the nature of the VSRP to early retirees (Cplt. at ¶¶ 8–9; Pl. Exh. 2). In doing so, plaintiffs attempt to "squeeze themselves" into the *Varity* line of cases. *Varity Corp. v. Howe*, 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) (holding that widespread misrepresentation regarding benefits may violate ERISA fiduciary duties); *Ames v. American National Can Co.*, 170 F.3d 751, 757–58 (7th Cir.1999). If plaintiffs indeed are raising that argument, they face an uphill battle, for courts have held that the *Varity* rule is applicable only in extreme circumstances. *See Frahm v. Equitable*

*Life Assurance Society*, 137 F.3d 955, 958–60 (7th Cir.), *cert. denied*, 525 U.S. 817, 119 S.Ct. 55, 142 L.Ed.2d 43 (1998); *Sprague v. General Motors Corp.*, 133 F.3d 388, 404–06 (6th Cir.), *cert. denied*, 524 U.S. 923, 118 S.Ct. 2312, 141 L.Ed.2d 170 (1998); *In re Unisys*, 57 F.3d 1255, 1260, 1264–65 (3rd Cir.1995), *cert. denied*, 517 U.S. 1103, 116 S.Ct. 1316, 134 L.Ed.2d 470 (1996). There exists a possibility of success, however, and therefore we lift the discovery stay entered in our order of May 16, 2000, and allow the parties to engage in discovery on this narrow issue.

4. The safe harbor language is as follows: "Benefits under this plan will be paid only if the plan administrator decides in his discretion that the applicant is entitled to them." *Herzberger*, 205 F.3d at 331.

shall be exercised in the Plan Administrator's sole and absolute discretion. If the Plan Administrator's discretionary authority under this Plan must be exercised with respect to himself as an Employee, then such discretionary authority shall be exercised solely and exclusively by the Employer.

(CNA Exh. 1, § 6.5).[5] Under the *Herzberger* standard these provisions indicate with sufficient clarity that the Plan Administrator has the discretionary authority to interpret the Plan. *See id.*, 205 F.3d at 331–33; *see also Lande v. Zurich American Ins. Co. of Illinois*, 2000 WL 1372833, at *3 (N.D.Ill. Sept.22, 2000) (holding that administrator had discretion where plan provided him "authority to 'determin[e] all questions related to coverage under the plan' and 'interpret [ ] and constru[e] the provisions of the Plan.' "); *White v. Employee Retirement Plan of Amoco Corp.*, 2000 WL 1221635, at *3 (N.D.Ill. Aug.21, 2000) (finding discretion where plan provided administrator with "authority '[t]o interpret the Plan, to determine applicable facts, and to decide all matters arising under the Plan, including the right to exercise discretion to remedy possible ambiguities, inconsistencies, and omissions.' ").

■ Thus, we will examine the Plan Administrator's decision under an arbitrary and capricious standard of review. *Firestone*, 489 U.S. at 115, 109 S.Ct. 948. This is the "least demanding" form of review and "any questions of judgment are left to the administrator of the plan." *Trombetta v. Cragin Federal Bank for Sav. Employee Stock Ownership Plan*, 102 F.3d 1435, 1438 (7th Cir.1996). The Plan Administrator's decision is to be upheld so long as it is based on "an informed judgment and articulates an explanation . . . that is satisfactory in light of the relevant facts." *Carr v. Gates Health Care Plan*, 195 F.3d 292, 294 (7th Cir.1999), *cert. denied*, 529 U.S. 1068, 120 S.Ct. 1675, 146 L.Ed.2d 484 (2000). It is not our place to determine whether the Plan Administrator's decision was correct in the first instance. Rather, our job is to affirm his ruling unless we conclude that it was "downright unreasonable." *Id.*

B. *Evaluation of Plan Administrator's Decision*

The issue addressed by the Plan Administrator is the same one as plaintiffs raise here. Plaintiffs argue that early retirees under the VSRP, unlike regular retirees under the Plan, received a vested lifetime health care allowance and therefore CNA's decision to terminate that subsidy violated ERISA. The Plan Administrator rejected this claim and we do not find that decision to be either arbitrary or capricious.

■ An employer generally is free to amend or terminate welfare benefits provided under an ERISA plan, and especially so when the controlling plan documents reserve the employer's right to amend or terminate those benefits. *See Murphy v. Keystone Steel & Wire Co.*, 61 F.3d 560, 566–67 (7th Cir.1995); *Ryan v. Chromalloy American Corp.*, 877 F.2d 598, 603 (7th Cir.1989). On the other hand, an employer may choose to provide vested welfare benefits by including a clear indication of its intent to do so in the plan documents. *See Inter–Modal Rail Employees Association v. Atchison, Topeka & Santa Fe Railway Co.*, 520 U.S. 510, 515, 117 S.Ct. 1513, 137 L.Ed.2d 763 (1997); *Sprague*, 133 F.3d at 400 (holding that "an employer's commitment to vest [welfare] benefits is not to be inferred lightly," and "must be found in the plan documents and must be stated in clear and express language").

In this case, CNA included a reservation of rights clause in the Plan and a number of related plan documents, indicating that it intended to retain the ability to modify welfare benefits in the future. Chiefly, the Plan in effect at the time the plaintiffs took

---

5. The quoted language is from the Plan that was in effect at the time plaintiffs elected early retirement; the most recent version of the Plan, adopted on October 14, 1998, confers discretionary authority on the Plan Administrator even more clearly than its predecessor plan. (Exh. 3, §§ 5.1, 6.5).

early retirement contains the following reservation of rights clause: "The Plan may be amended or terminated at any time or from time to time by the Board of Directors of [CNA] or the Compensation Committee of said Board" (Exh. 1, § 8.1). Successor plans contain a similar provision (Exhs.2–3, § 8.1). Equally important, the summary plan description for the Plan (the SPD), entitled "Your Benefits in 1991," contains a number of reservation of rights clauses, including on the booklet's inside cover, in its introduction, and at the end of each of the two sections describing the retiree health care allowance (Exh. 4; Def. Stmt. ¶ 18). *See Chiles v. Ceridian Corp.*, 95 F.3d 1505, 1511 (10th Cir.1996) (noting that the SPD forms an integral part of the ERISA plan documents and must be considered when determining whether an employer intended welfare benefits to vest); *see also Ryan*, 877 F.2d at 601, 603; 29 U.S.C. § 1022.

Other plan-related documents also contain reservation of rights clauses. The "Guide for Employees Considering Retirement During 1991" ("1991 Guide to Benefits") discusses retirement benefits under the Plan and SPD for employees considering retirement from CNA in 1991, details the age and service requirements for the retiree health care allowance, and states: "The coverages described in this Guide may be amended, revoked or suspended at the Company's discretion at any time, even after your retirement" (Exh. 6 at 16). The "Guide for Employees Considering Retirement During 1992" ("1992 Guide to Benefits") contains an identical clause (Exh. 7 at 15). Finally, a document entitled "Retiree Benefits in 1991," which provides further information about retirement benefits and the health care subsidy, also reserves CNA's right to modify benefits (Exh. 8; Def. Stmt. ¶ 28).

 Notwithstanding these numerous reservation of rights clauses, plaintiffs argue that the health care allowance provided to early retirees under the VSRP was a vested benefit not subject to future modification. They base this argument primarily on language found in the "Brief Description of the Voluntary Special Retirement Program" ("Brief Description"), a document distributed to CNA employees who were considering early retirement in 1991, and which sets forth the basic features of the VSRP. Plaintiffs argue that the Brief Description creates an ambiguity as to whether the health care allowance for early retirees was intended to be a vested benefit. *See Bidlack v. Wheelabrator Corp.*, 993 F.2d 603, 606–07 (7th Cir .), *cert. denied*, 510 U.S. 909, 114 S.Ct. 291, 126 L.Ed.2d 240 (1993). The Brief Description contains the following statement:

● *No reductions in Retiree Health Care Allowance*

> The maximum Retiree Health Care Allowance is earned at age 62 after 25 years of service as an active employee. If you retire under the Voluntary Special Retirement Program, you will be credited with the maximum Retiree Health Care Allowance, even if you have less than 25 years of service or are under age 62.

(Exh. 12 at 2). Seizing on the introductory heading, plaintiffs argue that "no reductions in Retiree Health Care Allowance" means that CNA created a vested lifetime benefit. We must read the terms of an ERISA plan "in an ordinary and popular sense," however, and construe them "as would a person of average intelligence and experience." *Grun v. Pneumo Abex Corp.*, 163 F.3d 411, 420 (7th Cir.1998) (citation omitted), *cert. denied*, 526 U.S. 1087, 119 S.Ct. 1496, 143 L.Ed.2d 651 (1999). When doing so, it becomes clear that plaintiffs' interpretation of the provision is not the most sensible one; rather, the above-quoted clause simply reflects that the age and service requirements were waived for early retirees and that, unlike regular retirees, early retirees were to receive the maximum health care allowance regardless of the number of years they had served or their retirement age. There is no ambiguity here. Plaintiffs'

argument is not supported by the Brief Description.[6]

In addition to the Brief Description, CNA distributed a number of other documents regarding the VSRP to its employees in 1991, including a cover letter from the Plan Administrator, a benefit calculation worksheet, a payment election form, the 1992 Guide to Benefits, an acceptance/rejection form, and a retiree benefit election form (Exhs.9–14). A review of this bundle of materials confirms that the health care allowance was not a vested benefit for early retirees. Leaping out from the list of documents, of course, is the 1992 Guide to Benefits. We visited that document above and noted that it both discusses the health care allowance benefit and contains an express reservation of rights clause (Exh. 7). Importantly, in the letter accompanying the VSRP documents, the Plan Administrator specifically pointed CNA employees to the 1992 Guide to Benefits, advising that it "provides information about the benefits available to you during retirement and highlights the decisions you need to make regarding those benefits" (Exh. 9 at 1). Other VSRP materials also contain language directing early retirees to key Plan documents. For example, the Brief Description directs participants to the 1991 Guide to Benefits and the SPD (Exh. 12; Def. Stmt. ¶ 35). The retiree benefit election form, by which plaintiffs accepted early retirement, similarly advises early retirees: "Before you make your Retiree Elections, you may wish to familiarize yourself with the information contained in the current [Guide to Benefits]" (Exh. 14). The 1991 Guide to Benefits, 1992 Guide to Benefits, and the SPD all contain express reservation of rights clauses. We must read related contract documents together in order to give them their proper construction. *Murphy*, 61 F.3d at 565. When we do so here, we conclude that CNA's reservation of rights applies to the health care allowance for VSRP retirees just as it does for regular retirees.

Thus, the Plan Administrator's decision to reject the written appeals of Serek and Jones was neither arbitrary nor capricious. In response to the written appeals, both the Claims Administrator and the Plan Administrator explained that CNA had reserved its right to terminate the retiree health care allowance for early retirees and directed Serek and Jones to the Plan and related documents which contain the reservation of rights provisions (Exhs.18, 20, 23, 25, 27). The Plan Administrator's decision was not unreasonable as it was supported by the Plan documents and law of ERISA. *See Russo v. Health, Welfare & Pension Fund, Local 705*, 984 F.2d 762, 765 (7th Cir.1993). Therefore, we grant summary judgment in CNA's favor with respect to count II.

## II. *Breach of Contract*

In count IV, plaintiffs allege breach of contract. Neither the complaint nor plaintiffs' brief provide much independent analysis of this claim. Instead, plaintiffs generally conflate their breach of contract claim with their ERISA benefits claim without detailing arguments in favor of count IV that are distinct from those they assert in support of count II. Reading between the lines, however, we construe count IV as alleging that early retirees entered into bilateral contracts with CNA by which they received an irreducible life-

---

**6.** Even if the provision did not explain itself away, the language "no reduction in retiree health care allowance" is relatively weak when compared to the clauses at issue in similar ERISA cases and does not aid plaintiffs' cause. ERISA case law holds that where a company has reserved its right to change or terminate a plan, welfare benefits provided under the plan, even those bestowed for a "lifetime," do not vest. *See Sprague*, 133 F.3d at 392–401; *Chiles*, 95 F.3d at 1512; *In re Unisys*, 58 F.3d 896, 899–904 (3rd Cir.1995); *see also Frahm v. Equitable Life Assurance Society*, 1995 WL 579282, at *3 (N.D.Ill. Sept.29, 1995) (holding that benefits did not vest where the SPD stated that "when you ... retire ... your health benefits will be free," but also stated that the company "reserves the right to change or terminate the group benefit program.").

time health care allowance, as well as other benefits, in exchange for taking early retirement. This theory is based on the VSRP documents as well as on oral statements made to early retirees.

The Seventh Circuit has acknowledged that a bilateral contract claim concerning ERISA welfare benefits is a valid cause of action. *See Frahm,* 137 F.3d at 957–58. As the court held in *Frahm,* however, a plaintiff cannot recover on such a theory if its bilateral contract with the employer did not, in fact, "lock in" the welfare benefits at issue. *Id.* at 958 (affirming lower court's holding that plaintiffs' contractual claim to permanent benefits must fail where the plan documents reserve the employer's right to terminate benefits at any time). Far from locking in permanent benefits, many of the VSRP documents either contain a reservation of rights clause or refer participants to plan documents that did (Exhs. 7, 9, 12, 14; Def. Stmt. ¶¶ 30–35). Moreover, none of the VSRP documents express a clear commitment to providing a permanent health care allowance.[7] *See Sprague,* 133 F.3d at 400. In these circumstances, evidence of oral statements is not relevant. *See Frahm,* 137 F.3d at 958; *Sprague,* 133 F.3d at 402–03. In *In re Unisys,* 58 F.3d at 906–07, the Third Circuit rejected a bilateral contract claim brought by early retirees because, as here, the early retirement program's offering materials referred participants to plan documents which, in turn, contained reservation of rights clauses. In *Sprague,* 133 F.3d at 402–03, the Sixth Circuit reached the same conclusion with regard to a bilateral contract claim under a set of facts that was more favorable to plaintiffs than are those presented here. Therefore, we grant summary judgment in favor of CNA with respect to count IV.

### III. *Estoppel*

Finally, in count V, plaintiffs ask us to estop CNA from terminating the health care allowance because, they say, CNA promised that the health care subsidy would not be reduced or terminated for VSRP retirees. The Seventh Circuit "has recognized a form of estoppel as a matter of federal common law in at least some ERISA cases." *Coker v. Trans World Airlines, Inc.,* 165 F.3d 579, 585–86 (7th Cir.1999); *see Black v. TIC Investment Corp.,* 900 F.2d 112, 115 (7th Cir.1990). But our circuit also has emphasized the "narrow scope" of estoppel claims and has made clear that "only extreme circumstances" justify such claims. *Sandstrom v. Cultor Food Science, Inc.,* 214 F.3d 795, 797 (7th Cir.2000); *Coker,* 165 F.3d at 585; *see Gallegos v. Mt. Sinai Medical Center,* 210 F.3d 803, 809 (7th Cir.) (collecting cases in which this circuit has allowed plaintiffs to proceed with an ERISA estoppel theory), *cert. denied,* —— U.S. ——, 121 S.Ct. 76, 148 L.Ed.2d 39 (2000). As set forth in *Coker,* 165 F.3d at 585, the elements of an ERISA estoppel claim are (1) a knowing misrepresentation; (2) made in writing;[8] (3) with reasonable reliance on that misrepresentation by plaintiffs; and (4) to their detriment.

Plaintiffs point to the VSRP materials, and particularly the Brief Description, as the source of CNA's written misrepresentations regarding the nature of

---

7. Plaintiffs incorrectly suggest that the absence of an express reservation of rights clause in most of the VSRP documents compromises CNA's right to amend, suspend, or terminate welfare benefits. An employer need not include an express reservation of rights in every benefit-related document. *See Sprague,* 133 F.3d at 401; *In re Unisys,* 58 F.3d at 907.

8. As a rule, oral representations cannot form the basis of an estoppel claim. *See Coker,* 165

F.3d at 585; *Frahm,* 137 F.3d at 961. While recognizing that "equitable estoppel cannot dilute the rule forbidding oral modifications to an ERISA plan," the court in *Bowerman v. Wal–Mart Stores, Inc.,* 226 F.3d 574, 586–89 (7th Cir.2000), held that oral representations may be relevant in circumstances in which the plan documents are ambiguous and/or misleading. This exception is not applicable here.

the early retirees' health care allowance. Even if we assume that the VSRP documents contain actionable misrepresentations and that plaintiffs relied on those misstatements to their detriment, we cannot find in plaintiffs' favor because plaintiffs' reliance was not reasonable. The Plan documents contain numerous, unambiguous provisions reserving CNA's right to amend, suspend, or terminate the health care subsidy. In the face of these disclaimers it was not sensible for plaintiffs to construe the VSRP as providing a permanent health care benefit and not reasonable for them to rely on that erroneous interpretation. The leading cases concur on this point. *See Frahm,* 137 F.3d at 961 (rejecting estoppel claim because "the plan and the summary plan descriptions accurately told the plaintiffs that the Equitable had retained the right to change or even discontinue the medical-care plan."); *Sprague,* 133 F.3d at 403–04; *In re Unisys,* 58 F.3d at 907–08; *see also Coker,* 165 F.3d at 586 (holding that plaintiff "could not have reasonably relied on the mailings from TWA in light of her easy access to convenient ways of ascertaining the true facts about her medical coverage"). We therefore grant summary judgment in CNA's favor as to count V.

### CONCLUSION

For the reasons set forth above, CNA's motion for summary judgment is granted with respect to counts I, II, IV and V, and discovery may proceed on count III in a manner consistent with this opinion.