In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1404

Funeral Financial Systems,

Plaintiff-Appellant,

v.

United States of America,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 C 7905--James B. Zagel, Judge.

Argued September 15, 2000--Decided December 13, 2000

Before Flaum, Chief Judge, Kanne, and Williams,
Circuit Judges.

Kanne, Circuit Judge. Plaintiff-Appellant,
Funeral Financial Systems ("Funeral Financial"),
asks this Court to find that the district court
incorrectly held the assignment of a World War II
veteran's insurance benefits to Funeral Financial
violative of the policy's terms and, thereby,
erroneously granted the United States' motion for
summary judgment. For the reasons stated below,
we agree with the district court's determination
regarding the validity of the assignment, and we
affirm that court's decision.

I.  History

World War II veteran Chafois Gilliam ("Gilliam")
died on January 9, 1998. As a result of his
service to his country, Gilliam obtained a
National Service Life Insurance ("NSLI") policy
from the United States Government in 1947, valued
at $10,000, pursuant to the National Service Life
Insurance Act of 1940, 38 U.S.C. sec.sec. 1901-
1963 (1994). Gilliam designated his wife, Shirley
Gilliam, and son, Dwight Gilliam, as joint
beneficiaries of the policy.

Four days after Gilliam's death, Shirley and
Dwight Gilliam assigned all rights, title, and
interest in $6,517.22 of the insurance benefits

available to them[1] as joint beneficiaries of the policy to another of Gilliam's sons, Keith Gilliam. On the very next day, Keith Gilliam purported to assign the interest he had just acquired to the Hall-Jordan Funeral Home ("Hall-Jordan") in return for funeral services for Gilliam. Hall-Jordan, in turn, purported to assign this interest to Funeral Financial in exchange for immediate funds from Funeral Financial to pay for Gilliam's funeral expenses.

Funeral Financial attempted to collect the life insurance policy proceeds by contacting the United States Department of Veterans Affairs ("the Veterans Administration"). Funeral Financial provided the Veterans Administration with written notice of the purported assignment from Hall-Jordan, and copies of the preceding purported assignments of the insurance benefits. Upon review of this information, the Veterans Administration notified Funeral Financial that "the proceeds of a Government Life Insurance policy cannot be assigned to a funeral home or to any funeral financial service company."

Responding to the government's refusal to pay Funeral Financial the proceeds from Gilliam's NSLI policy, Funeral Financial filed a civil action in the Chancery Division of the Circuit Court of Cook County, Illinois, seeking declaratory relief against National Service Life Insurance Company. Funeral Financial urged a determination that the assignments were valid and that the Veterans Administration must pay Funeral Financial $6,517.23. The United States removed the case to the United States District Court for the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. sec. 1441(a). Additionally, because National Service Life Insurance is not a separate entity, but instead is a program implemented by the Department of Veterans Affairs, the United States was substituted as the proper party defendant. Funeral Financial then sought relief pursuant to 38 U.S.C. sec. 1984(a), which provides for federal district court review of claims against the United States involving NSLI policies.

The United States filed a motion for summary judgment arguing that the assignment clause in Gilliam's policy restricts the assignability of his NSLI death benefits and renders the purported assignments invalid. Additionally, the government argued that 38 U.S.C. sec. 5301 prohibits any assignment of NSLI benefits that is not "specifically authorized by law," and mandates that these benefits "shall be exempt from the claim of creditors," such as Funeral Financial.

The district court agreed with the government

that the purported assignments were invalid. In explaining its conclusion, the district court focused on the assignment clause in Gilliam's policy, which states, "This policy is not assignable by the Insured. A beneficiary may assign all or any part of his/her interest in this policy to the Insured's widow, widower, child, father, mother, grandfather, grandmother, brother, or sister, when the designated contingent beneficiary, if any, joins in the assignment." The district court found that this language, which is taken from the language of 38 U.S.C. sec. 1918(a) (1994), clearly prohibits the assignment from Keith Gilliam to Hall-Jordan, as well as the subsequent assignment from Hall-Jordan to Funeral Financial.

The district court further held that 38 U.S.C. sec. 5301 rendered the assignments invalid. Referring to sec. 5301, the court explained that "the statute makes clear that veteran's benefits are assignable only as specifically authorized by law, and no such specific authorization exists for the assignments at issue here." Funeral Fin. Serv., Ltd. v. United States, No. 98 C 7905, 2000 WL 91919, at *2 (N.D. Ill. Jan. 18, 2000). Having found the assignments allegedly obligating the Veterans Administration to pay Funeral Financial invalid, the district court granted the United States' motion for summary judgment.

II.  Analysis

We review the district court's decision to grant summary judgment de novo. Wyatt v. Unum Life Ins. Co. of America, 223 F.3d 543, 545 (7th Cir. 2000). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed.2d 265 (1986). In determining whether summary judgment is appropriate, that is to say when deciding whether a genuine issue of material fact exists, we must review the record in the light most favorable to the non-moving party, in this case Funeral Financial, and make all reasonable inferences in its favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed.2d 202 (1986). If, after having reviewed the record in this manner, we were to conclude that the evidence is such that a reasonable jury could return a verdict for Funeral Financial, then the district court incorrectly granted the United States's motion for summary judgment. See id. at 249. If, however, we conclude that the evidence

favoring Funeral Financial is insufficient for a jury to return a verdict for that party, then summary judgment was properly granted. See id. at 250.

Funeral Financial asserts numerous arguments in support of its position that summary judgment was improperly granted because the attempted assignment of $6,517.23 of Gilliam's insurance benefits to Funeral Financial was valid. We find all of these arguments unpersuasive. Thus, we need only address three of Funeral Financial's strongest arguments in explaining why the district court correctly granted the government's motion for summary judgment.

A.  The Language of the Assignment Clause

The validity of the assignment at issue can be determined by examining the language of the assignment clause in Gilliam's insurance policy. Gilliam's policy, issued pursuant to a federal statute providing military veterans with insurance, is a written government contract. See Prudential Ins. Co. of America v. Athmer, 178 F.3d 473, 475 (7th Cir. 1999) (discussing life insurance policy issued pursuant to the Servicemen's Group Life Insurance Act of 1965, 38 U.S.C. sec.sec. 1965-1979). Interpreting the meaning of a provision in a federal government contract is a matter of federal common law, and therefore, we must apply federal common law rules of contract interpretation to determine whether the purported assignments of Gilliam's insurance proceeds were valid. See id. at 475; see also Pitcher v. Principal Mut. Ins. Co., 93 F.3d 407, 411 (7th Cir. 1996).

When applying the federal common law rules of contract interpretation we must first determine whether the clause of the contract at issue is ambiguous. Grun v. Pneumo Abex Corp., 163 F.3d 411, 420 (7th Cir. 1998) (citing Ryan v. Chromalloy American Corp., 877 F.2d 598, 602 (7th Cir. 1989)). The language of a contract is ambiguous if a section of that contract "is subject to reasonable alternative interpretations." Id. (citing Hickey v. A.E. Stanley Mfg., 995 F.2d 1385, 1389 (7th Cir. 1993)). In reviewing contract language for other possible interpretations, we are required to interpret the language "'in an ordinary and popular sense as would a person of average intelligence and experience.'" Id. (quoting Pitcher, 93 F.3d at 411). If a contract is not open to any other reasonable interpretations, and is therefore unambiguous, then the written words of the contract must dictate the disposition of a dispute involving that contract. Central States, Southeast and Southwest Areas Pension

Fund v. Kroger Co., 226 F.3d 903, 911 (7th Cir. 2000). Furthermore, except for the highly unusual instance "where literal application of a text would lead to absurd results or thwart the obvious intentions of its drafters," if a contract is found to be unambiguous, then we are not to examine any extrinsic evidence. Grun, 163 F.3d at 420 (internal quotation marks and citations omitted). When the language of an unambiguous contract "provides an answer, then the inquiry is over." Id. (citing Wikoff v. Vanderveld, 897 F.2d 232, 238 (7th Cir. 1990)).

There is nothing ambiguous about the assignment clause in Gilliam's NSLI policy. The clause provides that "[a] beneficiary may assign all or part of his/her interest in the policy." The clause also provides, however, a very specific and limited list of individuals to whom such a beneficiary may assign all or part of his or her interest. A beneficiary of an NSLI policy may only assign his or her interest to "the Insured's widow, widower, child, father, mother, grandfather, grandmother, brother or sister."

Applying the limitations of the unambiguous assignment clause, we conclude that the two assignments at issue are invalid. Although the initial assignment from Shirley and Dwight Gilliam to Keith Gilliam was proper, the next two assignments are clearly prohibited by the policy's assignment clause. Keith Gilliam is the son of Gilliam and is, therefore, one of the limited individuals to whom the assignment clause permits Shirley and Dwight Gilliam to assign all or part of their interest in the policy's proceeds. Neither Hall-Jordan, to whom Keith Gilliam attempted to assign his interest in the policy, nor Funeral Financial, to whom Hall-Jordan tried to assign its purported interest in the policy, however, can claim to be included in the limited group of individuals to whom Shirley and Dwight Gilliam could permissibly assign their interest in the policy. Thus, we find these two assignments to be in direct violation of the assignment clause and invalid.

Funeral Financial asserts that the restrictions on the assignability of Gilliam's NSLI proceeds only apply to the first assignment, from the initial beneficiary, Shirley and Dwight Gilliam, to the initial assignee, Kevin Gilliam. Funeral Financial contends that any re-assignment of the insurance proceeds is not hindered by the restrictions placed on the original beneficiary. This argument fails for two reasons. First, when a party to a contract assigns its interest in that contract to another party, the assignee, then that second party "stands in the shoes of the assignor and assumes the same rights, title

and interest possessed by the assignor." Perry v. Globe Auto Recycling, Inc., 227 F.3d 950, 953 (7th Cir. 2000) (internal quotation marks and citations omitted). When Shirley and Dwight Gilliam properly assigned their interest in Gilliam's policy to Keith Gilliam, he stepped into the role of beneficiary, and the restrictions of the assignment clause limited his ability to assign his newfound interest in the insurance proceeds. Thus, Keith Gilliam's assignment of his interest in his father's policy to Hall-Jordan is forbidden by the assignment clause. It follows that the attempted assignment from Hall-Jordan, who never actually obtained any interest in the policy, to Funeral Financial, an impermissible assignee, is also invalid.

Secondly, Funeral Financial's interpretation of who is bound by the assignment clause undermines the purpose of including any assignment restrictions in the insurance policy. The assignment clause in Gilliam's policy, implemented pursuant to 38 U.S.C. sec. 1918(a), is one of several steps Congress has taken to ensure that NSLI proceeds reach those individuals Congress and the policyholders intended these policies to benefit./2 Applying the same restrictions to those individuals who have themselves been assigned an interest in the policy through a proper assignment protects the rights of those individuals who stand ready to benefit from future valid assignments. As the district court pointed out, allowing an initial assignee to re-assign the interest in the proceeds he or she received from the designated beneficiary without any restrictions whatsoever "would create an end-run around the anti-assignment provisions of the statute." Funeral Fin. Serv., Ltd. v. United States, No. 98 C 7905, 2000 WL 91919, at *2 (N.D. Ill. Jan. 18, 2000). We will neither create nor endorse a method for individuals to bypass restrictions intentionally implemented by Congress.

B.  38 U.S.C. sec. 5301

The assignments at issue in this case are also rendered invalid by 38 U.S.C. sec. 5301. Section 5301, a part of the "special provisions relating to benefits," states that:

Payments of benefits due or to become due under any law administered by the Secretary shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or

after receipt by the beneficiary.

38 U.S.C. sec. 5301(a) (1994) (emphasis added). The "Secretary" referred to in this provision is the Secretary of the United States Department of Veterans Affairs. 38 U.S.C. sec. 101(1) (1994). The NSLI is one of many programs implemented by the Secretary and the Department of Veterans Affairs, and the benefits from Gilliam's NSLI policy are part of that group "of benefits due or to become due under law administered by the Secretary." 38 U.S.C. sec. 5301; see 38 U.S.C. sec. 1904(b) (1994). Thus, for any of the assignments at issue to be valid, they must be "specifically authorized by law." 38 U.S.C. sec. 5301. As we have previously explained, however, no such authorization exists for either Keith Gilliam's purported assignment to Hall-Jordan, or Hall-Jordan's purported assignment to Funeral Financial. The assignment clause in Gilliam's policy describes a limited group of individuals to whom an assignment can be considered as being "specifically authorized by law." Id. The two assignments at issue are not included in this group, and they are therefore barred by 38 U.S.C. sec. 5301.

C.  Congressional Intent

   Although we have already explained several reasons why the purported assignments at issue are invalid, we feel compelled to briefly express our disagreement with Funeral Financial's final assertion that the district court's decision fails to effectuate congressional purposes and, more importantly, fails to serve veterans and their families in a proper manner. Funeral Financial highlights a situation that may arise when the Veterans Administration enforces the restrictions on the assignment of insurance proceeds like those from Gilliam's policy. There may be instances where the families of recently deceased veterans are unable to immediately produce the funds needed to pay for a proper funeral service and burial. Although most of these families would be receiving the proceeds from their relatives' policies, a time delay in the distribution of those benefits could admittedly create a gap in time from when funeral expenses must be paid and when insurance benefits would be received. Thus, Funeral Financial argues that a determination that the assignment clause prohibits assignments like those at issue in this case would dishonor veterans by preventing their families to provide appropriate funeral arrangements.

   We first note that Congress has provided NSLI policyholders and their families the means to avoid this situation. A 1946 amendment to the

NSLI program enabled insured veterans to designate policy beneficiaries outside of the limited group of relatives originally established. See 38 U.S.C. sec. 1917(a) (1994). Furthermore, policyholders are able to have these insurance proceeds paid to their selected beneficiaries in "one sum" or in monthly installments. 38 U.S.C. sec. 1917(b) (1994). Thus, an NSLI policyholder could anticipate funeral expenses, even make specific arrangements, and then designate a funeral services provider as the direct beneficiary of the amount of money needed for those services. Although the funeral services provider would encounter a delay in distribution as do all beneficiaries, the provider could spend or borrow the immediate funds needed knowing that it would be paid by the government. Thus, the situation described by Funeral Financial only arises where no such arrangements are made, or where a funeral services provider refuses such an arrangement.

When formulating the NSLI program, Congress was undoubtedly aware of the delay that might occur between the death of a veteran with an NSLI policy and the distribution of that veteran's benefits to his designated beneficiaries. The Supreme Court stated as much in United States v. Henning, 344 U.S. 66, 73 S. Ct. 114, 97 L. Ed. 101 (1952), where, in analyzing an issue involving an NSLI policy, the Court noted that Congress was "fully aware of the sometimes inevitable delays in payment." Id. at 75. The Court also explained that in developing programs like the NSLI, Congress works to avoid certain problems, knowing that other difficult situations may arise. See id. at 75-76. Specifically, with regard to the NSLI program, the Court stated that in putting together this legislation, Congress "preferred the occasionally harsh result" that might arise from a delay in payment under the current program, to an alternative program that would allow funds from NSLI policies to fall into the hands of individuals or entities Congress did not intend to benefit. Id. at 76. Although Congress did not intend for any individual or family to encounter difficulties when dealing with the NSLI program, Congress ultimately designed the program to operate in a way that it believed would best serve veterans and their families. Therefore, our decision does not dishonor veterans, rather, it merely ensures that the policies and programs designed by Congress to reward veterans' commitment are interpreted and enforced consistent with the intent of Congress.

III.  Conclusion

Because we agree with the district court's conclusion that the assignment clause in

Gilliam's insurance policy prohibits the assignments at issue in this case, we AFFIRM.

/1 Although the NSLI policy included proceeds of $10,000, at the time of Gilliam's death, the policy was subject to an outstanding loan of $2,213.20. Thus, $7,786.80 of the policy's proceeds was available to Shirley and Dwight Gilliam.

/2 "From the beginning, the underlying policy of National Service Life Insurance has been to benefit living people and to care for the families and friends of men who gave their lives for their country." United States v. Short, 240 F.2d 292, 298 (9th Cir. 1956).