In the
United States Court of Appeals
For the Seventh Circuit

No. 01-1910

Donald and Patsy Israel, Richard and Shirley
Quinton, all d/b/a Israel and Quinton Farms,

Plaintiffs-Appellants,

v.

United States Department of Agriculture,
Farm Service Agency,

Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 00 C 223--Barbara B. Crabb, Chief Judge.

Argued October 23, 2001--Decided March 8, 2002

  Before Harlington Wood, Jr., Cudahy, and
Kanne Circuit Judges.

  Kanne, Circuit Judge.  In 1989,
plaintiffs restructured an existing loan
with the Farm Service Agency ("FSA")/1
and signed a ten-year agreement as part
of that restructuring. The agreement
required plaintiffs to pay the FSA a
percentage of appreciation that accrued
to their property if certain triggering
events transpired ("recapture"). In 1999,
the FSA determined that expiration of the
agreement was one of the triggering
events and sought recapture. Plaintiffs
sought administrative review of the FSA's
determination and argued that only three
events triggered recapture: full payment
on the loan, cessation of farming, or
transfer of the title of their property.
The National Appeals Division of the
Department of Agriculture found that the
terms of the agreement allowed recapture
at the expiration of the agreement.
Plaintiffs appealed that decision to the
Director of the National Appeals Division
for the Department of Agriculture, who
affirmed. Plaintiffs then sought judicial
review of the agency's determinations and
argued that they were arbitrary and
capricious, contrary to law, and
unsupported by substantial evidence. The
district court affirmed, and plaintiffs

appealed. We affirm.

I.  History

A.  Shared Appreciation Agreement

Plaintiffs, Donald and Patsy Israel and Richard and Shirley Quinton, own a farming partnership called Israel and Quinton Farms. In the fall of 1989, plaintiffs were indebted to the FSA in the amount of $239,478.91. After negotiating with the FSA, the FSA reduced ("wrote down") plaintiffs' loan by $100,357.34. Plaintiffs were thus left with a restructured debt of $139,121.57, which was secured by a preexisting real estate mortgage.

On September 15, 1989, as consideration for their write down, plaintiffs signed a ten-year Shared Appreciation Agreement ("Agreement") with the FSA, which was secured by a separate mortgage on plaintiffs' real property. The Agreement provided:

As a condition to, and in consideration of [FSA] writing down the above amounts and restructuring the loan, borrower agrees to pay [FSA] an amount according to one of the following payment schedules:

. . .

2.  Fifty (50) percent of any positive appreciation in the market value of the property securing the loan above as described in the security instruments between the date of this Agreement and either the expiration date of the Agreement or the date Borrower pays the loan in full, ceases farming or transfers title of the security, if such event occurs after four years but before the expiration date of this Agreement.

The amount of recapture by [FSA] will be based on the difference between the value of the security at the time of disposal or cessation by Borrower of Farming and the value of the security at the time this Agreement is entered into. If the borrower violates the terms of the agreement [FSA] will liquidate after the borrower has been notified of the right to appeal. [emphasis added]

In April 1994, plaintiffs advised the

FSA that they might arrange private financing to replace their FSA loan. The FSA told plaintiffs that this would cause the Agreement to "kick in," and that plaintiffs would then owe the FSA approximately $23,000.00 under the terms of the Agreement./2 Plaintiffs never obtained private financing and, thus, did not trigger the Agreement by "pay[ing] the loan in full." On January 26, 1998, the FSA sent plaintiffs a letter and advised them that the payoff amount remaining on their loan was $118,910.20. The letter did not reference the Agreement.

In letters to plaintiffs dated April 24, 1997, November 6, 1997, and October 5, 1998, the FSA wrote:

Our records indicate that on September 15, 1989, the Farm Service Agency (FSA) wrote down $100,357.34 of your debt. As a consideration for this write down you were required to sign a Shared Appreciation Agreement (copy attached).

Essentially what this document says is that if the value of your real estate increases after the date of the write down, you will be responsible for repaying some or all of the debt FSA wrote down. If any repayment is due it will become due when any one of the following events happens.

1.  Ten Years has passed.

2.  You pay the rescheduled loan in full.

3.  You ceased farming.

4.  You transferred title to the property.

On June 30, 1999, the FSA wrote plaintiffs a letter that stated, "[t]he purpose of this letter is to inform you that the Shared Appreciation Agreement . . . you entered into as a result of receiving a 'debt write down' will expire on September 14, 1999, which is 10 years after the date you signed it. . . . We have determined the amount of shared appreciation due is $96,500." The FSA calculated the amount due by using the following equation:

$345,000 (current appraisal of plaintiffs' real property)

minus $152,000 (1989 appraisal of plaintiffs' real property)

$193,000 (net appreciation)

times .50 (Agreement percent share)

equals $ 96,500 (appreciation demanded)

B.  Administrative Proceedings

Plaintiffs protested to the FSA, contending that under the terms of the Agreement they should not be required to pay shared appreciation. On September 9, 1999, the FSA refused to reconsider its determination and affirmed its decision to require payment of $96,500 in shared appreciation. The FSA noted that it was "bound by the Code of Federal Regulations," which provides that "shared appreciation is due at the end of the term of the Shared Appreciation Agreement."

On October 7, 1999, plaintiffs appealed to the National Appeals Division of the Department of Agriculture. Plaintiffs claimed, inter alia, that the Agreement did not allow for recapture upon the expiration of the Agreement. Plaintiffs argued that because the formula for calculating recapture did not explicitly mention the Agreement's expiration, such expiration should not be considered a triggering event. Under their view of the Agreement, recapture occurred "only where the borrower pays the loan in full, ceases farming, or transfers title of the security during the term of the Agreement."

On December 9, 1999, Hearing Officer Benner conducted an evidentiary hearing on the matter. During that hearing, plaintiffs testified that when they signed the Agreement, they did not believe that expiration of the Agreement constituted a triggering event. Plaintiffs also stated that conversations in 1988 with Michael Drewiske and in the 1990s with Karolyn Corbett, both FSA employees, led them to believe that the expiration of the Agreement was not a triggering event.

On January 3, 2000, Hearing Officer

Benner, relying in part on 7 C.F.R. Sections 1951.914 and 1922.201, held that the FSA's decision to demand $96,500 in shared appreciation was not erroneous. Benner wrote:

The Appellant's Shared Appreciation Agreement (SAA) expired on September 14, 1999. . . . Therefore, the Agency decision to calculate shared appreciation due is correct according to regulations.

The Appellants argue that the agreement "expired" on September 14, 1999, meaning that no shared appreciation is due. They also argue that they were told that this was the case at the time of signature. However, the agreement and the regulation clearly state that shared appreciation is due at the expiration of the agreement.

On or about February 4, 2000, plaintiffs appealed Hearing Officer Benner's decision to the Director of the National Appeals Division of the Department of Agriculture. In a decision dated March 17, 2000, Director Norman Cooper upheld Hearing Officer Benner's decision and concluded that "[a]ppellants failed to prove by a preponderance of evidence that the Agency decision was erroneous." Director Cooper stated:

The Hearing Officer's decision is supported by substantial evidence as follows:

1. The Appellants received a $100,357.34 write-down of Agency debt and entered into [the Agreement] on September 15, 1989. The [Agreement] expired on September 14, 1999.

2. The market value of the Appellants' property was determined to be $152,000 at the time the [Agreement] was executed. As of May 20, 1999, the property was determined to have a market value of $345,000. The property valuation was conducted by a Certified General Appraiser and was performed in accordance with the Uniform Standards of Professional Appraisal Practice (USPAP).

3. The Agency considered the current market value of the Appellant's property ($345,000), the market value upon execution of the [Agreement] ($152,000), and determined that the amount of recapture was 50 percent of the

appreciated market value ($193,000) or $96,500.

4. The Appellants agreed to pay 50 percent of any positive appreciation in value of the property during the term of the [Agreement] (September 15, 1989, to September 14, 1999).

5. On September 9, 1999, the Agency affirmed its decision to require payment of $96,500 in appreciation under the Terms of the [Agreement].

Director Cooper concluded:

Regulations at 7 C.F.R. sec. 1951.914(b) and the [Agreement] specify that the Agency can recapture a portion of the written-off debt by taking a share of any positive appreciation in the value of the real property. The Agency must collect 50 percent of any positive appreciation in the market value of the security between the date the [Agreement] was executed and the date it expires. . . .

Notwithstanding the Appellants' arguments on review that the [Agreement] is ambiguous and regulations are irrelevant, the terms of the [Agreement] are clear and published regulations, by law, are a proper basis for the Hearing Officer's determination. . . .

Substantial evidence supports the Hearing Officer's determination that the Agency did not err in establishing the amount of recapture due under the [Agreement] and requiring payment of such.

C. Judicial Review

On April 17, 2000, plaintiffs filed suit in the Western District of Wisconsin pursuant to the Administrative Procedure Act, 5 U.S.C. sec.sec. 701-706. On appeal, plaintiffs relied on the lack of a specific reference to the expiration of the Agreement in the formula for calculating recapture to support their contention that the Agreement's expiration was not a triggering event. The plaintiffs also relied on their conversations with Drewiske and Corbett to support this reading of the Agreement. In the alternative, plaintiffs argued that the FSA should be estopped from collecting $96,500 because plaintiffs relied to their detriment on statements

made by FSA officers Drewiske and Corbett.

On March 2, 2001, the district court affirmed the agency's determinations. The district court noted that "[t]he language of the [A]greement requires recovery of appreciation 'between the date of this Agreement and either the expiration date of the Agreement or the date Borrower pays the loan in full, ceases farming or transfers title of the security.'" The district court noted that the use of the disjunctive "or" strongly supported the position that the Agreement allowed recapture at the expiration of the Agreement, in this case on September 14, 1999. The district court rejected plaintiffs' argument that any conversation with Drewiske or Corbett should control over the plain language of the Agreement. The district court stated that Hearing Officer Benner and Director Cooper were presented with the same evidence and found for the FSA. Further, the district court noted that it was "not the role of the [district] court to re-weigh the evidence that was presented to the agency; rather, the court must consider whether the [Agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." The dis trict court then held that it could not conclude "that there was a clear error of judgment in the agency's interpretation of the" Agreement.

The district court also rejected plaintiffs' estoppel argument. First, the district court noted the doctrine of sovereign immunity would likely bar the use of estoppel in the present case. Even if the FSA was not immune, the district court found that plaintiffs did not satisfy an essential element of an estoppel claim because they had failed to demonstrate any affirmative misconduct by the FSA. Thus, the district court upheld the agency's determinations that expiration of the Agreement was a triggering event and that plaintiffs owed the FSA $96,500 under the terms of the Agreement. On April 17, 2001, plaintiffs appealed and asserted that the agency's determinations were arbitrary and capricious and were not supported by substantial evidence.

II. Analysis

## A. Standard of Review

The agency's legal determinations will be affirmed as long as they are not arbitrary or capricious, and are in accordance with the law. See Sierra Resources, Inc. v. Herman, 213 F.3d 989, 992 (7th Cir. 2000). The arbitrary and capricious standard is highly deferential, and even if we disagree with an agency's action, we must uphold the action if the agency considered all of the relevant factors and we can discern a rational basis for the agency's choice. See Sierra Club v. Marita, 46 F.3d 606, 619 (7th Cir. 1995). The agency's decision is not arbitrary or capricious as long as "the agency's path may be reasonably discerned." Mt. Sinai Hospital Med. Center v. Shalala, 196 F.3d 703, 708 (7th Cir. 1999). We will review the agency's factual findings under the substantial evidence standard. See id. at 709. Under this deferential standard of review, we review the entire record to see whether it contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Aegerter v. City of Delafield, Wis., 174 F.3d 886, 889 (7th Cir. 1999).

## B. Review of Agency Determination

Plaintiffs contend that the agency's determinations were erroneous because expiration of the Agreement was not a triggering event under the Agreement. To determine what events triggered recapture under the Agreement, we must examine the language of the Agreement itself. First, we must determine whether the relevant clause of the Agreement is ambiguous. See Funeral Fin. Sys. v. United States, 234 F.3d 1015, 1018 (7th Cir. 2000). If that clause is not open to any other reasonable interpretation, and is therefore unambiguous, then the language of the Agreement must dictate the disposition of this dispute. See id.

The relevant provision of the Agreement provides that plaintiffs agreed to pay the FSA:

2. Fifty (50) percent of any positive appreciation in the market value of the property securing the loan above as described in the security instruments

between the date of this Agreement and either the expiration date of the Agreement or the date Borrower pays the loan in full, ceases farming or transfers title of the security, if such event occurs after four years but before the expiration date of this Agreement.

("recapture provision") (emphasis added). Thus, in plaintiffs' case, the Agreement provides for 50% recapture of appreciation on whichever of the following dates occurs first: the Agreement's expiration on September 14, 1999, the date plaintiffs pay the loan in full, the date the plaintiffs cease farming, or the date that the plaintiffs transfer title of their property. Both parties agree that plaintiffs did not pay their loan in full, cease farming, or transfer the title of their property. Therefore, the Agreement's expiration on September 14, 1999 was the first triggering event under the recapture provision.

Plaintiffs contend, however, that the Agreement does not provide a formula for recapture at the expiration date of the Agreement, and therefore, the Agreement's expiration should not constitute a triggering event. The formula provision states that the amount of recapture "will be based on the difference between the value of the security at the time of disposal or cessation by Borrower of farming and the value of the security at the time [the] Agreement is entered into." Plaintiffs' argument is unpersuasive.

Director Cooper found that the plain language of recapture provision provides for recapture at the expiration date of the Agreement, and we agree. The recapture provision clearly states that recapture is allowed at "the expiration date of the Agreement." We reject plaintiffs' contention that the formula provision negates the clear language of the recapture provision solely because the formula provision does not mention the expiration date of the Agreement explicitly, as does the recapture provision. Because the plain language of the Agreement provides for recapture at "the expiration date of the Agreement," we cannot conclude that the agency's determinations were "arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with law" or "unsupported by substantial evidence." 5 U.S.C. sec.sec. 706(2)(A), (E).

The agency's determinations are also strongly supported by the language of the relevant statute. Plaintiffs' loan was secured by a real estate mortgage that stated that the Agreement was entered into pursuant to 7 U.S.C. sec. 2001. Section 2001(e)(4) states that "[r]ecapture shall take place at the end of the term of the agreement, or sooner--(A) on the conveyance of the real security property; (B) on the repayment of the loans; (C) if the borrower ceases farming operations." Id. at sec. 2001(e)(4) (emphasis added). Thus, the quoted language demonstrates that the FSA did not err in concluding that recapture is provided for at the expiration of the Agreement.

We have found only one other court that has interpreted this type of agreement, and that court reached the same conclusion as we do now. See In re Moncur, No. 98-03213, 1999 WL 33287727, at *4 (Bankr. D. Idaho May 27, 1999). In Moncur, the bankruptcy court was faced with an identical agreement and with the same issue. After examining the agreement as a whole, as well as the federal statute and regulations concerning the agreement, the Moncur court concluded that "[w]ithout question, the [FSA's loan] program contemplated a recapture payment at the conclusion of the [agreement] term if payment in full of the write-down balance had not been made during the term of the [agreement]." Id. Therefore, the bankruptcy court construed the agreement in favor of the FSA and held that recapture was allowed at the agreement's expiration. See id./3

Finally, plaintiffs appeal the district court's decision insofar as it contains a monetary judgment against them. However, the order of the district court only affirmed the agency determinations and did not result in an enforceable monetary judgment. See Israel v. U.S. Dept. of Agr., 135 F. Supp. 2d 945, 954 (W.D. Wis. 2001).

III. Conclusion

For the forgoing reasons, we AFFIRM the judgment of the district court in favor

of the FSA.

FOOTNOTES

/1 The FSA was formerly called the Farmers Home Administration.

/2 The Agreement would "kick in" because private financing would result in the FSA loan being paid off in full, one of the triggering events under the Agreement. The FSA calculated the amount owed as follows: the Agreement allowed the FSA to recapture 50% of any positive appreciation that accrued to plaintiffs' property. The appraised value of the property in 1994 was $198,000 and $152,000 in 1989. Thus, the total appreciation was $46,000, and the FSA was entitled to half of that amount--$23,000.

/3 Plaintiffs concede that their estoppel argument is without merit, and therefore it need not be addressed.