In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-2138

ROCHESTER HOLMES,

*Plaintiff-Appellant*,

*v.*

JOHN E. POTTER, Postmaster General,
United States Postal Service,

*Defendant-Appellee*.

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 05 C 447—**Andrew P. Rodovich**, *Magistrate Judge.*

ARGUED JANUARY 18, 2008—DECIDED DECEMBER 31, 2008

Before BAUER, WILLIAMS, and SYKES, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Rochester Holmes maintains
that his former employer, the United States Postal Service,
breached a settlement agreement signed after the media-
tion of a complaint he brought under the Rehabilitation
Act. In particular, he contends that the USPS breached the
agreement by requiring him to repay a voluntary with-
drawal he had taken from his retirement account, by

improperly calculating his retirement amount using his time in the military, and by adjusting his annual leave payment based on an existing negative leave balance. Because the settlement agreement is unambiguous, integrated, and contains no provisions detailing how benefits were to be calculated, the USPS did not breach the agreement. Therefore, we affirm the grant of summary judgment in the USPS's favor.

## I. BACKGROUND

Rochester Holmes began working for the United States Postal Service in 1970. In 1992, he filed a complaint in federal court in Minnesota alleging that the USPS violated Title VII during his employment there. Around that time, he had a break in service from his employment with the USPS and voluntarily withdrew about $60,000 from his retirement account. The case was settled in October 1994.

Shortly thereafter, Holmes began working at the Gary, Indiana postal facility. On June 25, 2003, he filed a discrimination complaint with the EEOC alleging that he had a disability (Chronic Adjustment Order with Depressed Mood and Mixed Anxiety and a Phase Life problem) that the USPS failed to accommodate in violation of the Rehabilitation Act. An EEOC administrative law judge referred the case to mediation.

The mediation took place on May 26, 2004. Holmes was present at the mediation along with his attorney. A USPS management employee and a USPS attorney also attended, though the parties were in separate rooms

during the mediation and communicated only through a mediator. The mediation proved successful, and the parties executed and signed a written settlement agreement that day. The agreement provided that retroactive to January 1, 2003 and continuing through October 6, 2004, Holmes would be placed on twenty hours per week administrative leave status and twenty hours per week leave without pay status. It also specified the salary he would receive during that period and provided that he was to retire or be deemed to have resigned effective October 6, 2004. The agreement also contains a clause that states: "[T]his settlement agreement contains all of the terms and conditions agreed to by the parties in settlement of this matter."

After the mediation, the federal government's Office of Personnel Management ("OPM") calculated that Holmes was owed $824.05 for unused annual leave. Also, a little over seven months after the mediation, the OPM wrote Holmes that because he had previously withdrawn retirement funds in the amount of $59,984, he could pay back that amount and receive retirement payments of $3233 per month, or not repay the amount and receive retirement benefits of $1096 per month.

Maintaining that USPS breached the terms of the settlement agreement, Holmes filed for enforcement of the agreement with the EEOC. The EEOC ruled that USPS had not violated the agreement, and Holmes filed suit in federal district court. He now appeals from the entry of summary judgment against him.

## II. ANALYSIS

Under the now-familiar standard, summary judgment is proper only if "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We review the district court's grant of summary judgment de novo, *Petts v. Rockledge Furniture LLC*, 534 F.3d 715, 720 (7th Cir. 2008), and note that "[t]he interpretation of an established written contract is generally a question of law for the court," *In re United Airlines, Inc.*, 453 F.3d 463, 468 (7th Cir. 2006).

### A.  Threshold issues

We begin with a quick word about our jurisdiction. A federal district court may not enforce a settlement agreement unless an independent basis of federal jurisdiction exists. *Lucille v. City of Chicago*, 31 F.3d 546, 548 (7th Cir. 1994). We have ruled before that a private plaintiff may bring an action under Title VII to enforce a pre-determination settlement agreement. *Ruedlinger v. Jarrett*, 106 F.3d 212, 215 (7th Cir. 1997). Claims under the Rehabilitation Act are enforceable through Title VII of the Civil Rights Act of 1964, 29 U.S.C. § 794a(a)(1), so the rationale in *Ruedlinger* applies here as well.

Another threshold issue is whether state or federal law applies to the interpretation of the settlement agreement. Holmes maintains that the settlement agreement is a federal contract subject to federal common law, while the USPS contends that state law should apply. The USPS is correct. A "settlement of a federal claim is

enforced 'just like any other contract' under the state law of contract." *Dillard v. Starcon Int'l*, 483 F.3d 502, 508 (7th Cir. 2007); *see also Pohl v. United Airlines, Inc.*, 213 F.3d 336, 338 (7th Cir. 2000) ("Issues regarding the formation, construction, and enforceability of a settlement agreement are governed by local contract law."). Our decision in *Funeral Financial Systems v. United States*, 234 F.3d 1015 (7th Cir. 2000), does not counsel otherwise. We applied federal common law in that case because we were interpreting provisions in a federal government contract, in particular, the plaintiff's contract with the government to provide insurance to military personnel, and the suit was brought under federal statute. *Id.* at 1017-18; *cf. Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 691 (2006) (noting that uniform federal law need not be applied in all cases involving federal government contracts). We note, too, that the result in this case is the same under both federal and Indiana state law.

B.     Holmes's specific arguments

Under Indiana state law, the court's goal in interpreting a contract is to "give effect to the parties' intent as reasonably manifested by the language of the agreement." *Reuille v. Brandenberger Constr., Inc.*, 888 N.E.2d 770, 771 (Ind. 2008). Indiana follows the rule that "extrinsic evidence is not admissible to add to, vary or explain the terms of a written instrument if the terms of the instrument are susceptible of a clear and unambiguous construction." *Univ. of S. Ind. Found. v. Baker*, 843 N.E.2d 528, 532 (Ind. 2006) (citation omitted). Therefore, unless the terms of a

contract are ambiguous, they will be given their plain and ordinary meaning. *Reuille*, 888 N.E.2d at 771.

### 1.    Annuity calculation

Holmes first argues that an issue of fact exists as to whether the USPS breached the settlement agreement when it reduced his retirement annuity by $59,984 after the agreement's execution. He states that during the mediation, the mediator performed calculations of the amount Holmes could expect to receive that did not account for this reduction and that he signed the settlement agreement based on these calculations.

Holmes had a break in service with the USPS during the early 1990's, and he received $59,984 from his retirement account during that time. When the government discovered this earlier voluntary withdrawal about seven months after the mediation, it informed Holmes that if he did not redeposit $59,984, his monthly annuity payment would be $1096 instead of the $3233 he says he anticipated after the mediation. (Holmes said nothing during the mediation about his earlier withdrawal.)

The reduction in annuity was not a breach of the settlement agreement because the agreement does not concern Holmes's retirement benefits. The agreement does provide that "on October 6, 2004, [Holmes] shall either be deemed to have retired or voluntarily resigned from his employment." The agreement therefore required the USPS to consider October 6, 2004 as Holmes's last date of employment, and it did so. But there is no discussion of the

amount of money Holmes would be paid during retirement, and the agreement did not spell out how his retirement pay would be computed if he chose to retire.

The settlement agreement required that Holmes be placed on paid administrative leave for twenty hours per week and approved leave without pay for the other twenty hours per week for a certain period. That was done. The agreement provided that Holmes would receive a specified salary during that time. That was done. The agreement required that Holmes retire or be deemed resigned as of October 6, 2004. That was done. The agreement also required that the USPS pay Holmes's attorney's fees. That too was done. The settlement agreement simply contains no provisions specifying the amount Holmes would receive each month upon retirement or the method for calculating that amount.

In addition, the mediator's statements to Holmes during the mediation session do not create a triable issue. Holmes maintains that evidence about what the mediator said to him during the mediation should be considered to ascertain the parties' intent. But we find nothing ambiguous about the word "retire" or any other word in the settlement agreement, and "extrinsic evidence is not admissible in an attempt to create an ambiguity." *DeBoer v. DeBoer*, 669 N.E.2d 415, 421 (Ind. Ct. App. 1996), *disapproved of on other grounds by Merritt v. Merritt*, 693 N.E.2d 1320, 1324 n.4 (Ind. Ct. App. 1998).

Finally, that Holmes settled the discrimination suit he brought in Minnesota does not mean that the USPS should now refund the $59,984 he voluntarily withdrew

from his retirement account during his break in service from the USPS in Minnesota. The Minnesota settlement agreement makes no mention at all of the money he withdrew from his retirement funds, nor does the settlement agreement in this case.

### 2.  Other provisions

Holmes also argues that a genuine issue of material fact exists as to whether the USPS properly calculated his retirement benefits in light of his time in the military. Immediately prior to beginning his employment at the USPS, Holmes served in the United States Air Force from April 7, 1969 through November 25, 1970. Holmes asserts that the mediator stated during the course of the mediation that the USPS was willing to add sufficient years of service to equal thirty years of service with the USPS exclusive of Holmes's military time.

The settlement agreement, however, makes no mention of any such understanding or of Holmes's military service. Instead, it contains an integration clause stating that the agreement "contains all of the terms and conditions agreed to by the parties in settlement of this matter." Under Indiana law, the parol evidence rule generally prohibits the introduction of extrinsic evidence for the purposes of varying the terms of a contract when parties have reduced an agreement to writing and included an integration clause. *Illiana Surgery & Med. Ctr., LLC v. STG Funding, Inc.*, 824 N.E.2d 388, 400 (Ind. Ct. App. 2005). Holmes does not argue that any exception to this general rule, such as fraud in the inducement, applies, so we will

only consider the terms of the settlement agreement itself. The agreement does not discuss Holmes's military service, and USPS did not breach the settlement agreement when it computed the amount of Holmes's retirement or the dates used in this calculation.

Holmes also argues that the USPS breached the settlement agreement by improperly calculating the amount of annual leave owed to him. The agreement provides that Holmes's employment status from January 1, 2003 through October 6, 2004 "shall be 20 hours per week paid administrative leave and 20 hours per week approved leave without pay." It further specified October 6, 2004 as Holmes's last day of service with the USPS.

Consistent with the settlement agreement, Holmes accrued annual leave through October 6, 2004, and he does not dispute that he was properly credited with accruing 192 hours of annual leave from January 1, 2003 through October 6, 2004. Instead, Holmes's quarrel is with an adjustment made later, after the government reviewed Holmes's annual leave balance. Upon review, the government concluded that Holmes had a *negative* balance of 168 hours of annual leave at the end of 2002, and its annual leave computation reflected an adjustment for that balance. But even if the annual leave adjustment was incorrect, it would not constitute a breach of the settlement agreement because none of its provisions mentions annual leave. Similarly, if Holmes did not receive the annual leave check as he suggests, his remedy is not in a suit for breach of the settlement agreement.

Finally, Holmes maintains that the USPS breached the settlement agreement when it deducted the cost of health

insurance premiums it had advanced to him. Again, however, the settlement agreement makes no mention of this detail, and any such deduction did not breach the agreement.

## III.  CONCLUSION

The judgment of the district court is AFFIRMED.